695 A.2d 286

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. MICHAEL
SORICELLI, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 3, 1996—Decided June 6, 1997.

Humphreys, J.A.D., dissented and filed opinion.

Before Judges PRESSLER, HUMPHREYS and WECKER.

*John J. Scaliti*, Special Deputy Attorney General, argued the cause for appellant (*Charles R. Buckley*, Deputy Attorney General; Acting Bergen County Prosecutor, attorney; *Mr. Scaliti*, of counsel and on the letter brief).

*Jodi L. Ferguson*, Assistant Deputy Public Defender, argued the cause for respondent (*Susan L. Reisner*, Public Defender, attorney, *Ms. Ferguson*, of counsel and on the letter brief).

The opinion of the court was delivered by

WECKER, J.S.C. (temporarily assigned).

The State appeals a probationary sentence imposed upon remand. Defendant pled guilty to second-degree possession of a controlled dangerous substance, phencyclidine, with intent to distribute, in violation of *N.J.S.A.* 2C:35–5a(1) and 2C:35–5b(7). After entering into a plea agreement calling for the State to recommend a maximum five-year sentence, defendant was sentenced to a five-year probationary term. The State appealed on the ground that the presumption in favor of incarceration had not been overcome. We reversed and remanded for resentencing. The Supreme Court denied certification. 143 *N.J.* 518, 673 *A.*2d 276 (1996). On remand defendant was sentenced to a three-and one-half-year probationary term.[1] This is the State's appeal from that sentence.

We have carefully reviewed the record in light of the briefs, the arguments of counsel and the applicable law. We are satisfied

---

[1] Defendant had served eighteen months of his original five-year probationary sentence when he was resentenced.

that there is substantial support in the record for the sentencing judge's explicit and implicit findings and for the sentence based upon those findings. We find no error or abuse of discretion and therefore affirm. *See State v. Roth*, 95 *N.J.* 334, 358, 471 *A.*2d 370 (1984).

At the time of defendant's original sentence, the judge recognized that he could not make the requisite findings that the presumption in favor of incarceration had been overcome.[2] The judge relied instead upon *N.J.S.A.* 2C:35–14c. That statute permits a defendant convicted of a second-degree offense to receive a probationary sentence along with commitment to a minimum six-month in-patient drug rehabilitation program if there has been a finding that the defendant would not be a danger to the community, is drug dependent, and is likely to be rehabilitated in the program. The judge found that the defendant had participated in a two-week in-patient rehabilitation program between the date of his plea and the date of sentence, was enrolled in a follow-up out-patient program, and was "well on his way" to rehabilitation. We found *N.J.S.A.* 2C:35–14c inapplicable, concluding that the plain language of the statute required a minimum six-month commitment. However, we explicitly declined to "address a circumstance where defendant received six months of in-patient treatment after the offense was committed or if defendant was in such a program at the time of sentencing."

On remand, the judge found that in the intervening eighteen month period, the defendant had been rehabilitated, and it would pose an undue hardship and an injustice to incarcerate him at that point. He therefore resentenced defendant to probation. Although the judge did not use the precise language of the statute, we are satisfied that he was clearly convinced that the mitigating circumstances substantially outweighed the aggravating and that

---

[2] Defendant acknowledged that his guilty plea constituted a violation of the probationary sentence imposed on his prior conviction for illegal possession of PCP.

the presumption of imprisonment had been overcome because "his imprisonment would be a serious injustice which overrides the need to deter such conduct by others." *N.J.S.A.* 2C:44–1d. The record supports that conclusion.

The judge noted evidence of defendant's twenty-two months of out-patient drug counseling, his assistance to others in the program, his responsible employment in his own pizza restaurant in upstate New York, regular visitation with his four-year old child, payment of his child support obligations, and his mother's health and financial circumstances. On resentencing, the judge had letters both from the in-patient and the out-patient programs in New York State, confirming defendant's participation. A recent letter from his New York probation officer confirmed defendant's drug rehabilitation, citing repeated negative urine screenings. There was overwhelming evidence of defendant's successful rehabilitation from the drug dependency at the time of resentencing. The probation officer also confirmed defendant's transition from public assistance to employment and then ownership of his own restaurant, describing defendant as an "exemplary probationer who continues to gain the optimum benefits from probation supervision."

The judge implicitly found and placed great weight upon statutory mitigating factors 9, 10 and 11: "[t]he character and attitude of the defendant indicate that he is unlikely to commit another offense; [t]he defendant is particularly likely to respond affirmatively to probationary treatment; and [t]he imprisonment of the defendant would entail excessive hardship to himself or his dependents." *N.J.S.A.* 2C:44–1b. It is apparent that the judge found that defendant's prior record was not serious and there was little risk of his committing another offense.

The sentencing court is permitted to consider the actual circumstances as of the date of a resentence, including what has occurred during the pendency of the appeal. *State v. Towey,* 244 *N.J.Super.* 582, 593–94, 583 A.2d 352 (App.Div.1990). The judge here said:

Now with the benefit of being a Monday morning quarterback, I wish every defendant that I placed on probation could do what Mr. Soricelli did.

Now I think this Court would be justified in placing him in a long-term in-patient program at this time, but he no longer, according to what we've heard, is using drugs. Certainly once addicted, you're always addicted, and he's going to have to fight hard.

... In fact, he's done better than what, I believe, I've seen most people do in a six-month in-patient program.

And I think the—the hardship that incarceration would cause at this time, the need for him and what he's done, I think it would be unjust to incarcerate him.

\* \* \* \* \* \* \* \*

I think what you've done deserves consideration. We hope sometimes to rehabilitate someone who has had prior run-ins with the law so that they can get their addiction under control and will not violate the rules of society.

As Mr. Maher indicated, 90 percent of our cases involve drugs or are drug related. And I think what—what probation is intended to do is—where drugs are involved is to rehabilitate someone so they don't have to use drugs, and if they don't have to use drugs, they won't resort to other crimes.

I think that's what Mr. Soricelli did, was on his way to doing at the time of the original sentencing, and is what he proved to us that he was attempting to do at that time by actually going out and doing it.

In effect, the judge found substantial compliance with the required six-month in-patient program because if defendant were still drug dependent, he could avoid prison by completing six-months of in-patient rehabilitation. We leave for another day the question whether successful rehabilitation prior to sentencing, with or without a full six-month in-patient experience, could warrant a 2C:35–14 sentence. For the present, we conclude that evidence of defendant's rehabilitation supported the sentencing judge's findings of mitigating circumstances that clearly outweighed any aggravating circumstance.

Extraordinary circumstances are required as the basis for imposing a probationary sentence for a first or second-degree crime. *See, e.g., State v. Johnson,* 118 *N.J.* 10, 15, 570 *A.*2d 395 (1990); *State v. Jarbath,* 114 *N.J.* 394, 555 *A.*2d 559 (1989). We have previously affirmed such a sentence for a defendant dying of AIDS. *State v. E.R.,* 273 *N.J.Super.* 262, 641 *A.*2d 1072 (App.Div. 1994). While the courts' " 'residuum of power' to overcome the presumption of imprisonment ... is severely limited," *State v.*

*Johnson, supra,* it is not so limited as to deny its availability to a defendant who has committed no violent offense, who has learned to live without the drugs for which he was convicted in the first place, and who has become a responsible father, son and citizen.

We are satisfied that neither society's interest in protection nor in punishment requires defendant's imprisonment, which would be a serious injustice under the circumstances. We are well aware of the Code's emphasis on uniformity in sentencing. *E.g., State v. Johnson, supra,* 118 *N.J.* at 15, 570 *A.*2d 395. It is consistent with that emphasis that we affirm a sentence that recognizes extraordinary circumstances and treats the defendant accordingly. Where the sentencing judge's limited "residuum of power" has been appropriately exercised, we will not second-guess the judge's decision. *Cf. State v. Roth,* 95 *N.J.* 334, 358, 471 *A.*2d 370 (1984).

We affirm.

HUMPHREYS, J.A.D., dissenting.

The defendant pled guilty to a count in an indictment charging him with second degree possession of phencyclidine ("PCP") with intent to distribute, a second degree crime. The defendant's crime carried a presumption of imprisonment. *N.J.S.A.* 2C:44–1(d). The sentencing judge admitted that the presumption of imprisonment had not been overcome. Nonetheless, he imposed a probationary sentence without any custodial term. His reason was that he believed that the defendant was in the process of rehabilitation and "I'm going to stick my neck out and take one last chance with this defendant."

The State appealed and a panel of the Appellate Division reversed. The panel found that the presumption of imprisonment had not been overcome and that: "[i]mprisonment in this case would not constitute 'a serious injustice' which overrides the need for deterrence." The case was remanded for resentencing, presumably the imposition of a custodial sentence. Nevertheless, the judge again imposed a probationary sentence without any custodial term.

My colleagues conclude that the defendant's rehabilitation and other mitigating factors constitute extraordinary circumstances which overcome the presumption against imprisonment and justify the judge's non-custodial sentence. I disagree. The majority's holding cannot be squared with either our previous decision or the requirements of the New Jersey Code of Criminal Justice. *N.J.S.A.* 2C:1–1 to 104–9. Further, the majority's affirmance places a seal of approval upon the sentencing judge's patent disregard of his obligation to follow an appellate ruling in a matter before him.

## I

The New Jersey Code of Criminal Justice sets forth sentencing guidelines and it is the "obligation of the judiciary to adhere to [them]." *State v. Johnson*, 118 *N.J.* 10, 15, 570 *A.*2d 395 (1990).

All first and second degree crimes under the Code are subject to a presumption of imprisonment. The Code provides

the court shall deal with a person who has been convicted of a crime of the first or second degree by imposing a sentence of imprisonment, unless, having regard to the character and condition of the defendant, it is of the opinion that his imprisonment will be a serious injustice which overrides the need to deter such conduct by others.

[*N.J.S.A.* 2C:44–1(d).]

On the prior appeal, the Appellate Division panel clearly held that the presumption of imprisonment had not been overcome, a holding which the majority of this panel has in reality overruled. The previous Appellate Division decision was well stated and soundly based. The panel said in an opinion by Judge Stern:

The need for uniformity in sentencing requires adherence to the relevant presumption based on the degree of offense. *State v. Jarbath*, 114 *N.J.* 394, 400[, 555 *A.*2d 559] (1989). The Legislature has created presumptions because sentencing under the Code focuses on "the gravity of the offense and not the blameworthiness of the offender." *State v. Roth*, 95 *N.J.* 334, 355[, 471 *A.*2d 370] (1984). Given the legislative classification of a second degree crime, the sentencing judge must be concerned with the goal of imposing "proportionate sentences" and the need for general deterrence. *State v. Jarbath, supra,* 114 *N.J.* at 408[, 555 *A.*2d 559]. Thus, the presumption of imprisonment embodied in *N.J.S.A.* 2C:44–1d cannot be overcome "merely because ... the mitigating factors preponderate over the

aggravating factors," *State v. Jabbour,* 118 *N.J.* 1, 7[, 570 *A.*2d 391] (1990), or even because adherence to the sentencing guidelines may seem "harsh." *Id.* at 9[, 570 *A.*2d 391].

The presumption of imprisonment may be overcome only if the "character and condition of the defendant" require the judge to determine that his incarceration would result in a "serious injustice which overrides the need to deter such conduct by others." *N.J.S.A.* 2C:44–1d. *See also State v. Jabbour, supra,* 118 *N.J.* at 7[, 570 *A.*2d 391]. Therefore, in order to overcome the general deterrent effect of the presumption, a defendant's condition or circumstance must truly be "idiosyncratic." *State v. Jabbour, supra,* 118 *N.J.* at 7[, 570 *A.*2d 391]; *State v. Jarbath, supra,* 114 *N.J.* at 408[, 555 *A.*2d 559].

The "serious injustice" exception confers a "residuum of power" in sentencing judges to consider a defendant's character or condition, but should be exercised only in "truly extraordinary and unanticipated circumstances" where the "human cost of such deterrence . . . is too great." *State v. Roth, supra,* 95 *N.J.* at 358[, 471 *A.*2d 370] (quoting *State v. Harris,* 70 *N.J.* 586, 596[, 362 *A.*2d 32] (1976)). *See also State v. Jabbour, supra,* 118 *N.J.* at 7–8[, 570 *A.*2d 391]; *State v. Jarbath, supra,* 114 *N.J.* at 406–07[, 555 *A.*2d 559]. The need to enhance a defendant's "prospects for rehabilitation" is simply not such a circumstance. *State v. Jarbath, supra,* 114 *N.J.* at 407[, 555 *A.*2d 559]; *State v. Roth, supra,* 95 *N.J.* at 355[, 471 *A.*2d 370]. *See also State v. Kent,* 212 *N.J.Super.* 635, 643[, 515 *A.*2d 1275] (App.Div.) ("availability" or "even the success of" drug rehabilitation program by itself not sufficient basis to conclude imprisonment would constitute "serious injustice"), *certif. denied,* 107 *N.J.* 65[, 526 *A.*2d 149] (1986).

Imprisonment in this case would not constitute a "serious injustice" which over-rides the need for deterrence. Defendant was previously convicted of PCP possession and was on probation at the time he committed the new offense. . . . While defendant's efforts to rehabilitate himself are commendable, we cannot lose sight of the legislative presumption which was appropriately recognized in the negotiated plea entered into by the defendant.

[ (footnote omitted).]

Our Supreme Court has not taken lightly the presumption of imprisonment set forth in the Code of Criminal Justice. In *State v. Jabbour, supra,* the sentencing judge had overridden the presumption of imprisonment for a first or second degree crime. The Supreme Court reversed. The Court said

[p]rospects for rehabilitation do not justify a reduced penalty. . . . [because] the Code 'removed judicial leeway to focus on the character and condition of the defendant in modifying sentences in order to enhance the defendant's prospects for rehabilitation.' Defendants who commit serious crimes should expect to spend time in prison.

[*State v. Jabbour, supra,* 118 *N.J.* at 8, 570 *A.*2d 391 (citations omitted).]

In *State v. Johnson, supra,* the Supreme Court held that the presumption of imprisonment had not been overcome by the asserted mitigating factors of drug and alcohol dependence and deafness. The Court agreed that prison life would be "harder for defendant than for hearing prisoners." 118 *N.J.* at 17, 570 *A.*2d 395. However, the Court pointed out that a sentencing court's ability to overcome a presumption of imprisonment is "tightly circumscribed" and that imprisonment is required "[i]n all but the rare case." *Id.* at 20, 570 *A.*2d 395; *see also State v. Cannon,* 128 *N.J.* 546, 565, 608 *A.*2d 341 (1992) (admitting a first or second degree offender into the Intensive Supervision Program (ISP) does not conform with the presumption of imprisonment for all first or second degree offenders); *State v. Rivera,* 124 *N.J.* 122, 126–27, 590 *A.*2d 238 (1991) (the trial court "ignored the presumption of incarceration for a second-degree offense" when it suspended imposition of sentence for two years).

The majority's decision in this case sharply conflicts with the statement of our Supreme Court in *State v. Jabbour:* "[p]rospects for rehabilitation do not justify a reduced penalty." 118 *N.J.* at 8, 570 *A.*2d 391. Furthermore, to hold that continued rehabilitation overcomes the presumption of imprisonment for second degree crimes involving the distribution of illegal drugs flies in the face of the Code's primary and "inexorable focus" on the offense rather than the offender. *State v. Roth,* 95 *N.J.* 334, 367, 471 *A.*2d 370 (1984). Drug dealing is a very serious offense in our society. Judges must comply with their obligation to apply the criminal law as it is written by the Legislature and not to create exceptions out of sympathy for drug dealing criminals who may be escaping the grip of drug addiction.

Furthermore, this defendant's offense history coupled with his sorry record on probation belies any suggestion that his is that "rare," "idiosyncratic," and "truly extraordinary" case in which the presumption may be overcome. *See State v. Jabbour, supra,* 118 *N.J.* at 5–7, 570 *A.*2d 391. He has been arrested on nine previous occasions for, among other things, aggravated assault, driving a

motor vehicle while intoxicated, criminal trespass and possession of CDS. He has been convicted three times of driving a motor vehicle while intoxicated.

When the defendant committed his present crime, he was serving a probationary term for a prior drug offense. He had made an "extremely poor adjustment to probation," and had been arrested on two other occasions while on probation.

After he was arrested in July 1993 for his present crime, he continued to violate the probation term imposed for his prior crime. He was directed to report to the Ulster County Probation Department in New York. When he reported he tested positive for PCP and cocaine. The Ulster County Probation Department returned him to the Bergen County Probation Department in New Jersey with a recommendation to charge him with a violation of probation. The Bergen County Probation Department ordered him to enter treatment with the proviso that if he failed to enter drug treatment, the case would be returned for violation of probation.

The defendant started out-patient counseling in September 1993 but stopped attending. The Bergen County Probation Department then ordered him to be evaluated at "Straight and Narrow" in Paterson, New Jersey. Once again, he tested positive for PCP. He also began to "develop excuses so [he] would not be available to enter treatment." He was again ordered to report to Straight and Narrow but refused to enter treatment.

The defendant then asked for a month's delay in order to get his affairs in order. In October 1993, his urine sample again proved positive for PCP. The sample had a very high level of PCP which indicated current use. The Probation Department was of the opinion that defendant needed long term in-patient treatment; nevertheless, the defendant failed to secure placement in a treatment facility. In November 1993, the Probation Department requested the court to order the defendant to enter a long term in-patient treatment facility or else be incarcerated for continually violating his probation.

In March 1994, the defendant pled guilty to the present offense. At his sentence hearing in September 1994, an addiction counselor at a New York drug facility stated that the defendant has been receiving out-patient treatment there and that he had tested negative for narcotics. Defendant's probation officer pointed out at sentencing that defendant apparently had not appeared at the Bergen County Probation Department since April and that as a result he had not been supervised by that department. The probation officer also said that the defendant had been told one month prior that he had to report weekly to the Bergen County Probation Department but he had still not reported. The Probation Department concluded that the defendant had failed to "live up" to the conditions of his probation. The State asked that a custodial sentence be imposed in accordance with the presumption of imprisonment. The judge said that he wanted further information from the Probation Department and adjourned the sentencing.

On the adjourned sentencing date of October 14, 1994, the defendant said he was in a New York in-patient drug program. The Bergen County probation officer said that the defendant had been an in-patient for only two weeks. The prosecutor pointed out that the defendant had not attended the drug program to which he had been referred by the Bergen County Probation Department. The judge responded that the Probation Department had a valid concern because the defendant "did everything he could to manipulate the system, to manipulate the probation department and the Court...."

Notwithstanding the defendant's "manipulation," and the presumption of imprisonment, the judge imposed a probationary sentence. The prosecutor objected to the imposition of a non-custodial term, pointing out that this was a second degree crime and therefore carried a statutory presumption of imprisonment. The judge responded: "I didn't say that the presumption [of imprisonment] was overcome, you could appeal me *and you'll probably have me reversed....*" (emphasis added). By this com-

ment, the judge demonstrated that he knew he was not abiding by the statutory sentencing guidelines and that his sentence was contrary to law. *See State v. Johnson, supra,* 118 *N.J.* at 15, 570 *A.*2d 395 (a judge's obligation is to adhere to the statutory sentencing guidelines).

In December 1995, the case was remanded from the Appellate Division, and in April 1996, the defendant was resentenced. At the resentencing, the defendant maintained, as he did at his original sentence, that he was rehabilitated. The defendant's attorney submitted a short one page letter addressed to her and purportedly signed by a "probation assistant" to the Ulster County Probation Department.

According to the letter, the Ulster County Probation Department had undertaken "courtesy supervision" of the defendant in January 1995. The majority states that the letter was from the defendant's "probation officer." Majority opinion, at 196, 695 *A.*2d at 288. However, the record does not reflect whether the probation assistant was the defendant's probation officer.

Further, I find no support in the record for the majority's statement that the judge had considered letters "both from the in-patient and the out-patient programs in New York State" which confirmed his participation in these programs. *See* majority opinion, at 196, 695 *A.*2d at 288. Defense counsel at the resentencing agreed that the defendant's participation in the New York program was only as an out-patient. The record does not reflect that the defendant participated in any in-patient program other than during the two weeks prior to the original sentencing.

I also disagree with the statement in the majority opinion that the "evidence" before the court at resentencing as to "defendant's successful rehabilitation" was "overwhelming." Majority opinion, at 196, 695 *A.*2d at 288. The "evidence" consists solely of the defendant's and his New York attorney's self-serving statements at the resentencing, certain letters from a New York drug facility and another letter from a private citizen. The letters have not been made part of the record before us.

Further, an investigation and written report by the probation department are mandatory requirements before a judge may sentence an offender. *N.J.S.A.* 2C:44–6(a); *R.* 3:21–2; *State v. Alvarado*, 51 *N.J.* 375, 376, 240 *A.*2d 677 (1968). At the resentencing, the original probation department report was nearly two years old. The judge should have asked for a new investigation report from the Bergen County Probation Department. Moreover, the record does not indicate that a representative of the Bergen County Probation Department attended the resentencing. Thus, the judge based his non-custodial sentence on essentially unverified and self-serving information furnished by the defendant. Such a record is manifestly inadequate to support the judge's extraordinary decision to disregard the presumption of imprisonment.

The majority also states that the defendant "could avoid prison by completing six months of in-patient rehabilitation." *See* majority opinion, at 197, 695 *A.*2d at 288. This is doubtful at best. The availability for a convicted drug criminal of a sentence of probation in lieu of incarceration has been carefully circumscribed by the Legislature. The applicable statute provides:

> Notwithstanding the presumption of incarceration pursuant to the provisions of subsection d. of N.J.S. 2C:44–1, and except as provided in subsection b. of this section, whenever a drug dependent person is convicted of an offense under N.J.S. 2C:35–5, N.J.S. 2C:35–6, section 1 of P.L.1987, c. 101 (C. 2C:35–7), N.J.S. 2C:35–10, N.J.S. 2C:35–11, or N.J.S. 2C:35–13, other than a crime of the first degree, the court, *upon notice to the prosecutor, may, on motion of the defendant and where the court finds that no danger to the community will result* and that the placement will serve to benefit the defendant by serving to correct his or her dependency on controlled substances, place the defendant on probation, which shall be for a term of five years. As a condition of that probation, the court shall order the defendant to enter a drug rehabilitation program, subject to such other reasonable terms and conditions as may be required by the court and by law, pursuant to N.J.S. 2C:45–1, and which shall include periodic urine testing for drug usage throughout the period of probation.
>
> [*N.J.S.A.* 2C:35–14(a) (emphasis added).]

The record does not indicate that the defendant filed a motion for relief under this statute either before the original sentencing or before the resentencing. The filing of such a motion is important. The prosecutor is thereby given prior notice and can

make an inquiry into the validity of the defendant's assertion that he is a good candidate for drug rehabilitation under the statute.

The prosecutor is also given an opportunity to consider whether the community would be endangered by continued probation for a person who has consistently violated probation and has "manipulated" the probation department and the court. Defendant's three convictions for driving while under the influence of alcohol or drugs are an important consideration as to whether he poses a "danger to the community." *See N.J.S.A.* 2C:35–14(a).

Further, the prosecutor said at resentencing that he had not done a record check as to whether the defendant had been arrested after the original sentencing eighteen months prior. The judge, lacking a new report from the Bergen County Probation Department, apparently relied on defense counsel's statement at the resentencing that the defendant did not have any new arrests. The lack of a record check, the absence of a new investigation and report from the probation department and the failure to give the prosecutor notice by filing a motion demonstrate clearly that this non-custodial sentence can in no way be justified by *N.J.S.A.* 2C:35–14.

In addition, subsection (c) of the statute requires that a defendant convicted of a second degree crime, as this defendant was, must be "committed *to the custody of a residential treatment facility* ... for a minimum of six months." *N.J.S.A.* 2C:35–14(c) (emphasis added). I can find no basis for the majority's suggestion that a defendant's out-patient participation might be "substantial compliance" with the requirement of a custodial six month residential in-patient program. *See* majority opinion, at 196–197, 695 *A.*2d at 288–289. Thus, the record amply demonstrates that this defendant is neither eligible for nor deserving of the relief provided by *N.J.S.A.* 2C:35–14.

In sum, no justification has or could be shown on this record to warrant a non-custodial sentence. This case cannot be somehow shoe-horned into the category of a "rare case" that surmounts the presumption of imprisonment for a second degree crime.

## II

Additionally, we should not disregard the sentencing judge's expressed determination to impose a non-custodial term no matter what an appellate court has decided. The judge said at the resentencing that if appealed, "they'll send it back to me and I'll have a go-around with the Appellate Division again." Thus, the trial judge by his own words has chosen to administer the law as he wishes instead of as the appellate court directs.

Such judicial defiance cannot be tolerated. It is fundamental to our system of justice that a trial judge must obey the decision of an appellate tribunal. *See Reinauer Realty Corp. v. Borough of Paramus*, 34 *N.J.* 406, 415, 169 *A.*2d 814 (1961) ("[T]rial judges are privileged to disagree with the pronouncements of appellate courts; the privilege does not extend to non-compliance."); *Flanigan v. McFeely*, 20 *N.J.* 414, 420, 120 *A.*2d 102 (1956) (Brennan, J.) ("[T]he trial court is under a peremptory duty to obey in the particular case the mandate of the appellate court precisely as it is written."); *accord Jersey City Redevelopment Agency v. Mack Properties Co.*, 280 *N.J.Super.* 553, 562, 656 *A.*2d 35 (App.Div. 1995).

An example puts this judicial defiance in proper perspective. Assume a judge was reversed for imposing a prison sentence instead of probation. On remand, the judge insisted on reimposing the same prison sentence. Assume further that at the resentencing the judge said that he knew he would be reversed again and then "have a go-around with the Appellate Division again." I have no doubt that we would reverse summarily and direct that the case be assigned to another judge for resentencing. The same should be done here. I respectfully dissent.