722 A.2d 95

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. MICHAEL
SORICELLI, DEFENDANT–RESPONDENT.

Argued September 15, 1998—Decided January 11, 1999.

*John J. Scaliti,* Assistant Prosecutor, argued the cause for appellant (*William H. Schmidt,* Bergen County Prosecutor, attorney).

*Teresa A. Blair,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey, (*Peter Verniero,* Attorney General, attorney).

*Jodi L. Ferguson,* Assistant Deputy Public Defender, argued the cause for respondent (*Ivelisse Torres,* Public Defender, attorney).

The opinion of the Court was delivered by

STEIN, J.

Based on the dissent below, the State appeals to this Court as of right, *R.* 2:2–1, from a judgment of the Appellate Division affirming the Law Division's resentencing of defendant to a three and one-half year probationary sentence based on defendant's guilty plea to second-degree possession of phencyclidine (PCP) with intent to distribute, in violation of *N.J.S.A.* 2C:35–5(a)(1) and –5(b)(7), and his guilty plea to a violation of probation for a prior offense involving possession of PCP. *State v. Soricelli,* 302 *N.J.Super.* 193, 197–98, 695 *A.2d* 286 (App.Div.1997). In an earlier unpublished opinion, a different panel of the Appellate Division reversed the Law Division's imposition of a five-year probationary sentence on defendant for the same offenses, concluding that defendant's apparently successful rehabilitation from his drug addiction did not overcome the statutory presumption of incarceration for second-degree offenses, see *N.J.S.A.* 2C:44–1(d), and remanding the matter for resentencing. On remand, the Law Division again imposed a probationary sentence that was affirmed by the judgment from which this appeal is taken.

Primarily, we consider whether defendant's sentence to a probationary term for second-degree possession of PCP with intent to distribute is inconsistent with the statutory presumption of imprisonment for offenders convicted of first- and second-degree crimes. Secondarily, we consider the relevance of a second-degree drug offender's apparent rehabilitation in the context of both the statutory presumption of incarceration and the Legislature's determination in the Comprehensive Drug Reform Act of 1987, *L.* 1987, *c.* 106 (Drug Reform Act), *N.J.S.A.* 2C:35–1 to –23, that under prescribed circumstances second-degree drug offenders may be sentenced to five-year probationary terms in conjunction with a placement for at least six months in a drug rehabilitation program in the custody of a residential treatment facility. *N.J.S.A.* 2C:35–14.

I

The factual basis for defendant's negotiated plea to second-degree possession of PCP with intent to distribute was based on events occurring on July 18, 1993, when defendant was returning to New Jersey from New York City with his two co-defendants, John Gadonniex and Michael Cacchio. Defendant knew that Cacchio possessed a quantity of PCP that he had purchased in Manhattan for his own use and to share with friends. Gadonniex was driving and defendant was in the front passenger seat when local police stopped their car in Paramus. Cacchio threw some of the drugs, which were in a cigarette pack, into the front seat. Defendant placed the pack in the front of his pants to conceal them from the police. Although asserting his intention to return the drugs to Cacchio, defendant acknowledged that by concealing the drugs he acted as an accomplice to Cacchio. In addition to the four packets of PCP found in the cigarette box on defendant's person, the police found five more packets in a ripped portion of the vehicle's front seat, and ten packets in the patrol car in which defendant was transported separately to police headquarters.

Defendant was indicted for second-degree possession of PCP with intent to distribute, two counts of third-degree unlawful possession of PCP, third-degree unlawful possession of cocaine, and two counts of hindering apprehension. In March 1994, defendant pled guilty to second-degree possession of PCP with intent to distribute in exchange for the State's recommendation to dismiss the remaining counts of the indictment and to impose a maximum sentence of five years imprisonment without a period of parole ineligibility. Because defendant already was serving a probationary term for a 1992 conviction for possession of PCP, he acknowledged that the current offense constituted a violation of probation and the State agreed to recommend that the sentences for both those offenses run concurrently.

Defendant's pre-sentence report reflects a "poor adjustment to Probation" prior to his arrest in July 1993, and refers to six occasions between July and October 1993 on which defendant tested positive for drug use. After being arrested again in October 1993 for violating probation, defendant's probation officer informed him that he needed long-term treatment to overcome his drug dependency.

In December 1993, defendant completed a fourteen-day inpatient drug treatment program at the Rhinebeck Lodge for Successful Living in Rhinebeck, New York. He then attended after-care counseling sessions at the Ulster County Mental Health Center. Between March 1994 and the imposition of sentence in October 1994, defendant received individual therapy as an outpatient at Bridge Back Drug Rehabilitation Center (Bridge Back) in Kingston, New York, where he also participated in an early recovery group, an alcohol awareness group, and a relapse prevention group. One of Bridge Back's counselors reported that defendant tested negative on all of his urine drug screen tests between March and May 1994, and also attended five to seven meetings per week of Alcoholics Anonymous or Narcotics Anonymous.

At defendant's sentencing hearing, defendant acknowledged a longstanding substance abuse problem that led to the loss of his

home and business and the deterioration of his marriage. He described his in-patient and out-patient rehabilitation programs at Rhinebeck Lodge and Bridge Back, and stated that he regularly attended Alcoholics Anonymous and Narcotics Anonymous meetings, was paying child support for his young daughter, and was employed part-time. He informed the court that he had not used drugs or alcohol since November 1993. Defendant's brother and his New York attorney corroborated defendant's progress toward a successful rehabilitation. Diane Zines, defendant's addiction counselor at Bridge Back, informed the court that defendant had completed the basic six-month rehabilitation program and continued to attend all required individual and group sessions. She characterized his outlook as "very positive" and verified that all of his drug-urine test results were negative. Ms. Zines stated that defendant would require approximately one additional year of individual and group counseling.

After adjourning the imposition of sentence for two weeks to acquire additional information concerning defendant's compliance with the Bergen County Probation Department's reporting requirements, the sentencing judge imposed a five-year probationary sentence conditioned on out-patient counseling, drug-urine testing, employment, and any other counseling required by the Probation Department. In imposing sentence the court referred to *N.J.S.A.* 2C:35–14, which permits trial courts to sentence certain drug-dependent offenders to a residential in-patient rehabilitation program for not less than six months as an alternative to prison. The court acknowledged that defendant's past and future treatment did not comply with that statute. Nevertheless, the court determined that a probationary sentence was appropriate:

We have a second-degree offense which carries a presumption of incarceration [under *N.J.S.A.* 2C:44–1(d) ], extremely difficult if not impossible to overcome in this situation. How could he overcome that? He can't, he cannot. However, we do have a statute [*N.J.S.A.* 2C:35–14] that says if someone has a drug problem that can go into a—in lieu of State Jail, a long term in-patient program which is defined as a six-month in-patient drug program. Now probation probably asked, the State asked why did Judge Gaeta continue this? Is he going to put him on probation on a second degree offense? Maybe. I don't know what I was going to do at first

because I did see some signs that maybe he was coming around, basically, in May and June and I wanted to see if he was but I still cannot ignore what happened before, I cannot ignore that. We had a violation of probation, we had another offense that was committed so what do I do? What do I do with someone[ ] who is well on his way to—I think now being rehabilitated, if I were to just go on the aggravating and mitigating factors here and says yep, he's amenable to probation, he's doing well which I believe he is doing now, is that enough to overcome the presumption in this particular circumstance? And I say that I'm clearly convinced that the mitigating factors substantially outweigh the aggravating? I don't think so. The interests of justice that he should be placed on probation, no, we do have a statute that addresses these types of problems. The question is how do we get around the six months. I think what he's done and what he's going to continue to do is going to satisfy me that he will continue with his rehabilitation.

The court also imposed a $2000 DEDR penalty, a $50 laboratory fee, a $50 VCCG assessment, and suspended defendant's driver's license for six months. The court continued defendant's probationary status on his prior drug offense for an additional five years.

The State appealed. After transferring the appeal from its sentencing calendar to the plenary calendar and ordering the filing of briefs on the interrelationship between the presumptive sentencing requirements of *N.J.S.A.* 2C:44–1(d) and the residential drug treatment program authorized by *N.J.S.A.* 2C:35–14, the Appellate Division reversed and remanded for resentencing. The court observed that, pursuant to *N.J.S.A.* 2C:35–14(c), "a drug dependent defendant sentenced to probation for a second degree crime must be placed in a residential program for a minimum term of six months. The plain language of the statute could not be clearer." The court noted that the presumption of imprisonment in *N.J.S.A.* 2C:44–1(d) can be overcome only if the sentencing court determines that incarceration would result in "serious injustice" that overrides the need to deter, a standard that confers a "residuum of power" in sentencing judges but is exercisable only in extraordinary circumstances where "the human cost of such deterrence ... is too great." *State v. Roth,* 95 *N.J.* 334, 358, 471 *A.*2d 370 (1984)(quoting *State v. Harris,* 70 *N.J.* 586, 596, 362 *A.*2d 32 (1976)). Relying on *State v. Jarbath,* 114 *N.J.* 394, 407, 555 *A.*2d 559 (1989), the panel observed that enhancement of a defen-

dant's prospects for rehabilitation was not the type of circumstance that could override the need for deterrence.

Noting defendant's prior drug conviction and his probationary status when he committed the instant offense, the court concluded that, notwithstanding defendant's commendable efforts at rehabilitation, a prison sentence would not constitute a serious injustice overriding the need for deterrence. We denied defendant's petition for certification. 143 *N.J.* 518, 673 *A.*2d 276 (1996).

Approximately eighteen months after his initial sentence, defendant appeared before the same Law Division judge for resentencing pursuant to the Appellate Division's remand. Defendant submitted to the court a report from his New York probation officer that confirmed that defendant had completed his outpatient treatment at Bridge Back and had continued to produce negative drug-urine tests. The probation officer noted that in the intervening months defendant had purchased a pizzeria and no longer received public assistance benefits. Her letter stated that "Soricelli is an exemplary probationer who continues to gain the optimum benefits from Probation supervision."

Defendant's New York attorney informed the court that defendant had continued his child-support payments and regularly visited his four-year-old daughter. He also confirmed that defendant had purchased a pizzeria in Kingston, New York, with the assistance of a loan from his mother. The attorney represented that if defendant were incarcerated his mother intended to relocate from Florida to New York to manage the business.

The sentencing court noted that it "would be justified in placing him in a long-term in-patient program at this time, but he no longer, according to what we've heard, is using drugs.... But I think the 18 months that he spent on [ ] probation and in the program, and what he's accomplished, equates to what someone could do in [a] six-month in-patient program." The court concluded that, in view of defendant's apparent rehabilitation, incarceration would constitute an injustice that outweighs the interest in deterrence. Accordingly, he resentenced defendant to three and

one-half years probation, conditioned on continuation of out-patient counseling.

The State again appealed. In a published opinion, a divided panel of the Appellate Division held that the sentencing court's limited discretionary authority was appropriately exercised in concluding that defendant's imprisonment could constitute a serious injustice in view of his successful rehabilitation from drug addiction, his responsible employment in his own restaurant, and his steadfast assumption of his child-support and visitation obligations concerning his four-year-old daughter. *Soricelli, supra,* 302 *N.J.Super.* at 196–98, 695 *A.*2d 286. The dissenting member disagreed, observing that rehabilitation is not a factor that should overcome the presumption of incarceration for second-degree offenders, and that in any event the evidence of rehabilitation before the court was essentially anecdotal and a current investigative report was mandatory. *Id.* at 203–05, 695 *A.*2d 286. The dissenting member also was critical of the sentencing judge's "defiance" of the determination by the prior Appellate Division panel that defendant's incarceration was obligatory. *Id.* at 207, 695 *A.*2d 286.

## II

The controlling legal principles are well settled. First- and second-degree crimes carry a presumption of incarceration. *N.J.S.A.* 2C:44–1(d) provides, in pertinent part:

The court shall deal with a person who has been convicted of a crime of the first or second degree by imposing a sentence of imprisonment unless, having regard to the character and condition of the defendant, it is of the opinion that his imprisonment would be a serious injustice which overrides the need to deter such conduct by others.

Unlike a mandatory sentence, the presumption of incarceration confers "a residuum of power in the sentencing court not to imprison in those few cases where it would be entirely inappropriate to do so." *Roth, supra,* 95 *N.J.* at 358, 471 *A.*2d 370 (quoting The New Jersey Penal Code, *Final Report of the New Jersey Criminal Law Revision Commission,* Vol. II: Commentary, at 326). We have adhered to the view that the narrow statutory

standard—"imprisonment would be a serious injustice which overrides the need to deter such conduct by others"—is satisfied only in "truly extraordinary and unanticipated circumstances." *Roth, supra,* 95 *N.J.* at 358, 471 *A.*2d 370 (quoting *Fair and Certain Punishment, Report of the Twentieth Century Fund Task Force of Criminal Sentencing* (1976)).

This Court regularly has declined to find circumstances sufficient to constitute "serious injustice" that would overcome the presumption of incarceration. *See, e.g., State v. Rivera,* 124 *N.J.* 122, 126–27, 590 *A.*2d 238 (1991)(reversing suspended sentence—equivalent of non-custodial sentence—where defendant pled guilty to second-degree robbery despite fact that defendant was drug addicted); *State v. Johnson,* 118 *N.J.* 10, 19, 570 *A.*2d 395 (1990)(holding that defendant failed to establish that imprisonment would be "serious injustice" overriding need for deterrence despite defendant's deafness, drug and alcohol problems, and role as wage earner for family where defendant pled guilty to first-degree aggravated sexual assault of stepdaughter); *State v. Jabbour,* 118 *N.J.* 1, 8–9, 570 *A.*2d 391 (1990)(holding that although incarceration carried "high risk of [his] never overcoming his present emotional difficulties and achieving normalcy," defendant's weak physical and psychiatric condition did not distinguish him from other sex offenders and that imprisonment would not be "serious injustice" that overrode need to deter others); *State v. Kelly,* 97 *N.J.* 178, 219–20, 478 *A.*2d 364 (1984)(holding that five-year sentence for battered woman convicted of reckless manslaughter for killing husband not excessive; defendant's abuse at the hands of man she murdered and her children's need to have their mother at home were not "truly extraordinary circumstances").

The only decision by this Court determining that the "serious injustice" standard was satisfied is *Jarbath, supra,* 114 *N.J.* 394, 555 *A.*2d 559. There, a mentally retarded young woman charged with the murder of her nineteen-day-old son pleaded guilty to a reduced charge of second-degree manslaughter. The factual predicate for the plea was that the baby had died after defendant twice accidentally dropped him on a coffee table. The trial court

sentenced her to an indeterminate custodial term not to exceed seven years. The Appellate Division, taking into account her significant mental and emotional disabilities, the fact that she had been severely abused by other prison inmates on a daily basis, and that because of her retardation imprisonment did not serve as a deterrent, resentenced her as a third-degree offender to a five-year probationary term conditioned on psychiatric care, isolation from young children, and other appropriate protective conditions. *Id.* at 399, 555 A.2d 559. In affirming the Appellate Division's resentencing determination, this Court stated:

> Defendant's deficient mental and emotional condition were relevant not only to her culpability but also to her capacity to assimilate punishment. Both courts found that the crime was unintentional. There was little evidence to suggest that defendant could comprehend that she had committed a crime that deserved a prison term, or that she could modify her behavior based on her imprisonment. In addition, defendant did not have the understanding or emotional strength of relatively normal persons. She apparently could not endure life in prison without unusual suffering, that is, hardship and privation greatly exceeding that which would be accepted and endured by ordinary inmates as the inevitable consequences of punishment. In sum, as determined by the Appellate Division, the "serious injustice" of imprisonment under these circumstances clearly outweighs the needs of general deterrence.
>
> [*Id.* at 408–09, 555 A.2d 559.]

Without specifically addressing the implications of *N.J.S.A.* 2C:35–14, the provision in the Comprehensive Drug Reform Act of 1987 that authorizes as an alternative to incarceration a residential treatment program for convicted drug offenders, including second-degree offenders if the prosecutor consents, our precedents heretofore have not recognized the goal of rehabilitation as a factor to be emphasized in determining whether the "serious injustice" standard for overcoming presumptive prison sentences is satisfied. *See Jabbour, supra,* 118 *N.J.* at 8, 570 A.2d 391 ("Prospects for rehabilitation do not justify a reduced penalty."); *Jarbath, supra,* 114 *N.J.* at 407, 555 A.2d 559 ("It is, nevertheless, clear under the Code that rehabilitation is not the goal to be achieved by a consideration of the character and condition of the offender."). Those pronouncements concerning rehabilitation merit reevaluation in the context of the Legislature's authorization of residential

treatment as an alternative to incarceration for certain convicted drug offenders.

The Drug Reform Act, which first authorized residential treatment for certain drug offenders, was precipitated by a comprehensive evaluation of the problem of drug use and distribution throughout the State issued by Governor Thomas Kean in October 1986, and entitled *Blueprint for a Drug–Free New Jersey* (*Blueprint* ). That report acknowledged that "there is a gross deficiency in the number of treatment facilities available in New Jersey to drug abusers," noting that "there are currently less than 700 beds available for long-term treatment for both adults and adolescents in New Jersey." *Blueprint, supra,* at 19–20. The report stated: "The current dearth of residential and out-patient treatment facilities in New Jersey cannot be allowed to continue." *Id.* at 20.

The report also addressed the likelihood that the Governor's proposed initiatives for harsher punishment for drug offenders would exacerbate the State's problem of prison overcrowding, observing that "[w]e cannot insist upon the strict enforcement of new drug laws without providing the means by which violators can be punished and rehabilitated." *Id.* at 30. Among the alternatives proposed for alleviating prison overcrowding and housing drug offenders was the establishment of intensively supervised residential treatment centers. *Id.* at 28–30.

Six months later the Legislature enacted and the Governor signed the Drug Reform Act, described as an act that "makes a sweeping revision of New Jersey's drug laws, creates several new offenses, and adopts a number of innovative provisions designed not only to target the most dangerous offenders, but also to provide meaningful rehabilitative opportunities for certain other offenders." Assembly Judiciary Committee Commentary to the Comprehensive Drug Reform Act, November 23, 1987 (Reform Act Commentary). The Reform Act Commentary also emphasized that among the most significant "highlights" of the Drug Reform Act was a provision to

[a]uthorize the rehabilitation of certain drug dependent persons convicted of *specific offenses during a five-year period of probation.* Such rehabilitation includes mandatory periodic urinalysis and a minimum of six months confinement to a residential treatment facility. This provision would also establish strict revocation procedures to ensure compliance with the program and the safety of the community.

[Reform Act Commentary, *supra,* at 3.]

The Reform Act Commentary also includes a detailed summary of *N.J.S.A.* 2C:35–14, the provision that authorizes residential treatment for certain drug offenders:

This section provides for rehabilitative treatment as an alternative to incarceration in appropriate cases. A defendant's eligibility for admission into a rehabilitation program under this section, and the standards governing his or her continued participation in such a program, are carefully prescribed.

Specifically, a person who has been convicted of a first degree offense is ineligible for admission into a rehabilitative program. A person convicted of *N.J.S.A.* 2C:35–7 or 2C:35–6 is also ineligible for rehabilitative treatment under this section unless the prosecutor joins in the defendant's application for admission. In such cases, the court would have no discretion to admit the defendant into a rehabilitation program over the prosecutor's objection. Similarly, any person convicted of a drug distribution offense who had previously been convicted of a distribution offense would not be eligible for rehabilitative treatment unless the prosecutor joins in application.

While probation under current law may ordinarily be imposed for any length of time not to exceed five years, probation under this section, can only be imposed for a fixed, five year term. As a condition of probation, and in addition to any other conditions which may be imposed by the court, the section mandates that the defendant enter a drug rehabilitation program approved for such purposes by the court. As part of this program, the defendant must submit to periodic urine testing for drug use throughout the five year probationary period. Such procedures will ensure that a defendant placed on probation under this section will not be able to conceal continued drug usage.

Subsection c. of this section mandates that a person convicted of a second degree crime or convicted under *N.J.S.A.* 2C:35–7 who is placed in a drug rehabilitation program under this section must be committed to a residential treatment facility for a minimum of six months. This section further provides that the period of commitment to a residential treatment program cannot exceed five years. This section provides clear notice that a defendant who leaves a residential treatment facility without authorization is subject to a charge of criminal escape as defined at *N.J.S.A.* 2C:29–5.

Upon successful completion of the required residential treatment program, the defendant must fulfill the remaining period of the five years of probation with credit for time served in the residential facility and for any incarceration in a county jail or correctional facility which may have been imposed and served as a condition of probation.

Subsection d. prescribes the procedures to be followed for revoking a defendant's placement into a rehabilitation program. Specifically, this subsection provides that where a defendant violates any term or condition of probation, the court may, in its discretion, revoke the defendant's probation and sentence the defendant to any custodial term which might originally have been imposed.

If the court elects not to revoke defendant's probation upon a first violation, and the defendant is again found to have violated any term or condition of the probation, the court must revoke the defendant's probation on that subsequent violation and proceed to sentence the defendant to the term which could originally have been imposed. The court upon a second violation of probation would have no discretion to continue the defendant's participation in the rehabilitation program.

Where the defendant's probation pursuant to this section is revoked for any reason, it is intended that the defendant would be resentenced to a custodial term, since the defendant would no longer be eligible for rehabilitative treatment and because it would be inappropriate to place the defendant on regular probation which generally is less restrictive than the rehabilitation program contemplated by this section. It is intended, in this regard, that a revoked defendant would be resentenced to prison.

This section expressly provides that where the defendant's participation in a rehabilitation program is revoked, he will thereafter be ineligible for release from prison under the Intensive Supervision Program (ISP) administered by the courts. Release into that program would be inappropriate where the defendant has already abused the opportunity for rehabilitative treatment and judicial lenity afforded to him pursuant to this section.

Subsection e. of this section, finally, authorizes the court, after considering the defendant's financial resources, to require him to pay for all or any portion of the costs associated with his participation in any rehabilitation program or period of residential treatment authorized or mandated by this section.

[Reform Act Commentary, *supra*, at 29–31.]

## III

The conclusion is inescapable that rehabilitation of drug offenders is a significant objective of the Drug Reform Act and that the goal of rehabilitation is of sufficient importance in appropriate cases to overcome the presumption of incarceration applicable to second-degree drug offenders. To date, however, the legislative authorization of residential drug treatment as an alternative to incarceration is limited only to "drug dependent" defendants with respect to whom the sentencing court finds that the drug treatment "placement will serve to benefit the defendant by serving to correct his or her dependency on controlled substances." *N.J.S.A.* 2C:35–14(a). No alternative to incarceration is

authorized for second-degree offenders such as defendant who, based on the anecdotal evidence before the sentencing court, appears to have successfully overcome his addiction as a result of residential and out-patient treatment over an extended period. Ironically, if defendant's drug rehabilitation were incomplete or less successful he would appear to be an appropriate candidate for a five-year probationary sentence conditioned on commitment to a residential drug treatment rehabilitation facility for a minimum of six months, pursuant to *N.J.S.A.* 2C:35–14. Defendant's apparent rehabilitation, however, renders him ineligible for that sentence and no legislatively authorized alternative sentence, except as later discussed herein, has been established.

We commend the issue to the Legislature for its consideration because its authorization of treatment rather than incarceration for certain unrehabilitated offenders suggests that an alternative to incarceration logically should be available, subject to discretionary determinations by the prosecutor and sentencing court, for totally rehabilitated drug offenders. See *Final Report of the Supreme Court Task Force on Drugs and the Courts* (April 1991), at 51 (noting that critics of Comprehensive Drug Reform Act believe that treatment rather than mandatory incarceration is a more constructive sentencing disposition for drug offenders amenable to rehabilitation). Without affording the Legislature an adequate opportunity to address the issue, we will not construe *N.J.S.A.* 2C:44–1(d) as authorizing non-custodial sentences for unique second-degree drug offenders that demonstrate complete rehabilitation from a prior drug dependency. *Cf. State v. Cannon,* 128 *N.J.* 546, 559–60, 564–67, 608 *A.*2d 341 (1992)(stating that "[t]he judiciary does not determine the punishment for crimes. That is up to the Legislature," and holding that application of Intensive Supervision [of Probation] Program for first- and second-degree offenders is inconsistent with *N.J.S.A.* 2C:44–1(d)). Accordingly, we hold that on remand a custodial sentence is mandatory.

During oral argument of this appeal the State informed the Court that, subject to review of an updated pre-sentence report, the State would not object to a sentence of defendant on remand to a term appropriate for a third-degree crime, pursuant to *N.J.S.A.* 2C:44–1(f)(2), noting that defendant had been serving a probationary sentence since 1994. The State observed that at defendant's last sentencing hearing it had agreed to recommend a custodial sentence of five years without a parole ineligibility term, and would not have objected to a flat three-year sentence if the court had exercised its discretionary authority pursuant to *N.J.S.A.* 2C:44–1(f)(2). In our view, assuming that the court makes the requisite findings and that a current pre-sentence report confirms the representations made to the sentencing court concerning defendant's rehabilitation, the court's exercise of its authority on remand pursuant to *N.J.S.A.* 2C:44–1(f)(2), particularly with the State's concurrence, would be an appropriate exercise of discretion. *Cf. State v. Megargel,* 143 *N.J.* 484, 505, 673 *A.*2d 259 (1996)(holding that standard for downgrading offense for sentencing purposes requires that court be clearly convinced that mitigating factors substantially outweigh aggravating factors and that, in addition, separate compelling reasons exist so that downgrade serves "interest of justice").

We also note the potential availability to defendant of the Intensive Supervision Program (ISP) established pursuant to *R.* 3:21–10(b). Pursuant to *N.J.S.A.* 2C:43–11, defendants convicted of second-degree crimes are now eligible for entry into ISP, but the statute prohibits second-degree offenders from entering ISP prior to serving at least six months of the custodial sentence and being within nine months of parole eligibility if the county prosecutor or Attorney General objects in writing. We infer that in defendant's case the county prosecutor and the Attorney General would consider carefully the merits of an ISP application by defendant prior to those statutory time frames and would not unreasonably interpose an objection. Although defendant appears to present qualities that are consistent with admission into ISP,

see *Cannon, supra,* 128 *N.J.* at 552–55, 608 *A.2d* 341, we express no view on his ultimate qualification for the program.

## IV

We reverse the judgment of the Appellate Division and remand the matter to the Law Division for resentencing to an appropriate custodial term.

*For reversal and remandment*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.