642 A.2d 942

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. KEITH STEWART, DEFENDANT–APPELLANT.

Argued February 15, 1994—Decided June 8, 1994.

*Mordecai Garelick*, Assistant Deputy Public Defender, argued the cause for appellant (*Susan L. Reisner*, Acting Public Defender, attorney).

*Debra Cannella*, Assistant Prosecutor, argued the cause for respondent (*Clifford J. Minor*, Essex County Prosecutor, attorney; *Gary A. Thomas*, Assistant Prosecutor, on the letter brief).

The opinion of the Court was delivered by

GARIBALDI, J.

The State charged defendant, Keith Stewart, with three counts of narcotics violations and a disorderly persons offense of resisting arrest. Pursuant to a plea agreement under *N.J.S.A.* 2C:35–12 (section 12), defendant pled guilty to possession of a controlled dangerous substance with intent to distribute within 1,000 feet of school property, in violation of *N.J.S.A.* 2C:35–7 (section 7). As part of that agreement, the State dropped the other charges, and the court sentenced defendant on January 21, 1993, to two years probation conditioned on serving 364 days in the county jail.

Shortly thereafter defendant applied to the Essex County Local Intensive Probation Supervision Effort (ECLIPSE), an early-release program. On March 25, 1993, over the State's vigorous objection, the court granted defendant's application, and he was immediately released from the county jail. The sentencing judge, then acting in his capacity as the judge in charge of that early-release program, granted defendant's application to enter ECLIPSE.

The Appellate Division summarily vacated the court's order granting defendant admission into ECLIPSE, citing *State v. Bridges,* 131 *N.J.* 402, 621 *A.*2d 1 (1993). We granted defendant's petition for certification, 134 *N.J.* 479, 634 *A.*2d 526 (1993), to determine whether a court may divert to ECLIPSE a defendant who, pursuant to a section 12 plea agreement, pled guilty to a section 7 violation but who has not yet completed the county-jail sentence.

I

Section 7 is part of the Comprehensive Drug Reform Act of 1986, *N.J.S.A.* 2C:35-1 to -23 (Drug Reform Act). The Legislature, in enacting the Drug Reform Act, declared that the public policy of the State provides for "the strict punishment, deterrence and incapacitation of the most culpable and dangerous drug offenders." *N.J.S.A.* 2C:35-1.1c.

Specifically, defendant pled guilty to violating that portion of section 7 providing that

[a]ny person [found guilty of] * * * possessing with intent to distribute a controlled dangerous substance * * * while on any school property * * * or within 1,000 feet of such school property * * * is guilty of a crime of the third degree and shall, except as provided in *N.J.S.* 2C:35-12, be sentenced by the court to a term of imprisonment. * * * [In cases involving at least one ounce of marijuana], the term of imprisonment shall include the imposition of a minimum term which shall be fixed at * * * [at least] three years, * * * during which the defendant shall be ineligible for parole.

A mandatory sentence may be reduced under a negotiated plea agreement entered pursuant to the terms of section 12. That section in pertinent part provides that a court

shall impose the mandatory sentence unless the defendant has pleaded guilty pursuant to a negotiated agreement * * * which provides for a lesser sentence or period of parole ineligibility. The negotiated plea * * * agreement may provide for a specified term of imprisonment within the range of ordinary or extended sentences authorized by law, a specified period of parole ineligibility, a specified fine, or other disposition. In that event, the court at sentencing shall not impose a lesser term of imprisonment, period of parole ineligibility or fine than that expressly provided for under the terms of the plea * * * agreement. (Emphasis added.)

The Assembly Judiciary Committee recognized that section 12 permitted waiver of the mandatory terms imposed under the Drug Reform Act:

The [Drug Reform Act] bill requires the imposition of mandatory terms of imprisonment and mandatory terms of parole ineligibility for the most prolific or repeat offenders. These mandatory prison terms can only be waived by a negotiated plea or post-conviction agreement, and where that agreement expressly so provides, the defendant cannot receive a lesser term of imprisonment or fine than that expressly agreed to. This provision will ensure that the State, as well as the defendant, receives the full benefit of a negotiated agreement.

[Judiciary Committee Statement, Assembly Bill No. 3270 at 3 (Dec. 18, 1986) (emphasis added) ("Committee Statement").]

By authorizing negotiated plea agreements that waive the mandatory terms of the Drug Reform Act, the Legislature hoped to " 'encourage offenders to cooperate with law enforcement efforts to detect, apprehend and successfully prosecute otherwise well-insulated drug traffickers.' " State v. Vasquez, 129 N.J. 189, 204, 609 A.2d 29 (1992) (quoting Cannel, New Jersey Criminal Code Annotated, comment 1 on N.J.S.A. 2C:35–1 (1992)). The Committee emphasized, however, that if the prosecutor waived the Drug Reform Act's mandatory terms in the plea agreement, the defendant must then receive, at a minimum, the agreed-on term in the plea agreement. Committee Statement, supra, at 3.

Defendant entered into a section 12 plea agreement, pursuant to which the court sentenced him to two years probation on the condition that he serve 364 days in county jail. Yet barely more than two months after defendant had started serving his term of

imprisonment in the county jail, he was admitted into ECLIPSE and released from jail.

## II

The ECLIPSE program, begun in 1985, exists to eliminate overcrowding at the Essex County Jail Annex by placing selected offenders back into the community under intensive probation supervision. Essex County Local Intensive Probation Supervision Effort Program, *Progress Report Covering January through June, 1993*, at 4 (1993). The program rests on a belief that probation is a deterrent to criminal behavior and a rehabilitative tool. *Ibid.*

The ECLIPSE program is beneficial to Essex County in a number of ways. Essex County saves $100.00 per day in incarceration costs, and by retaining jail space for more serious offenders, it avoids the risks associated with overcrowding. Furthermore, community service of ECLIPSE participants results in the completion of thousands of dollars' worth of necessary work in court buildings, the sheriff's department, churches, hospitals, and schools.

ECLIPSE is modeled after the Intensive Supervision Program (ISP) administered by the State's Administrative Office of the Courts. In ISP

[a]ll participants must be employed full time, submit to urine monitoring for alcohol and illegal substance use; maintain a nightly curfew which is monitored by ISP officers; perform community service; make regular payments toward fines, restitution, penalties, support of dependents, and the cost of being supervised in the Program; actively participate in treatment programs, and keep a daily diary and weekly budget of all income and expenses. They may not collect welfare assistance, unemployment insurance benefits, or lend or borrow money.

[*State v. Cannon*, 128 *N.J.* 546, 554–55, 608 *A.*2d 341 (1992).]

Both programs restrict admittance to non-violent criminals and have essentially the same goals of reducing prison overcrowding, imposing punishment, and fostering rehabilitation.

■ In spite of their advantages, however, court-administered probation programs may not be operated in a manner that conflicts with explicit legislative intent. *Id.* at 563, 608 *A.*2d 341. Thus, we must determine whether diversion into ECLIPSE of a defendant who has pled guilty to a section 7 offense frustrates the Legislature's intent expressed in section 12.

### III

■ We hold that the court improperly admitted defendant into the ECLIPSE program because section 12 expressly prohibits a court from imposing a lesser term of imprisonment than that provided in the plea agreement. The language and intent of section 12, which we discussed in *Bridges, supra,* 131 *N.J.* at 405–14, 621 *A.*2d 1, mandates that result.

The defendant in *Bridges* pled guilty to possession of cocaine with intent to distribute within 1,000 feet of school property in violation of section 12. Bridges' plea agreement, similar to Stewart's, provided for probation conditioned on serving 364 days in county jail. The issue was whether section 12's prohibition against imposing a lesser term of *imprisonment* than provided for in the plea agreement applied to custodial terms of less than one year in county jail. 131 *N.J.* at 414, 621 *A.*2d 1. We determined that the court was bound to enforce the plea agreement as written. *Ibid.*

Stewart argues that *Bridges* is inapplicable because that case addressed initial sentencing, whereas ECLIPSE admitted Stewart in a subsequent proceeding. Section 12, however, does not differentiate between sentencing proceedings. Its intent is simply that defendants should receive the sentences to which they agreed in their negotiated plea agreements. As we observed in *Bridges:*

To allow a court to sentence below the prison term provided in the plea agreement undermines the clear legislative purpose expressed in section 12. Prosecutors would understandably be reluctant to enter into a section 12 plea agreement knowing that in addition to the waiver of the mandatory-minimum parole disqualifier, the defendant could receive only a fraction of the bargained-for time of incarceration. To promote cooperation between drug offenders and law enforce-

ment, therefore, section 12 must be read to limit a court's discretion to sentence below the agreed-upon term of imprisonment.

[131 *N.J.* at 410, 621 *A.*2d 1].

Section 12's purpose, therefore, is achieved only if the defendant receives the sentence required under the plea agreement. If a court initially imposes the sentence required under the plea agreement, only to rescind that sentence a few months later, the court has effectively reduced the sentence agreed on in the plea agreement. That sentence reduction would violate section 12.

In *Cannon, supra,* we considered whether a court could properly reduce a custodial sentence by releasing a defendant into the State-run ISP program. Our holding in that case rested on *N.J.S.A.* 2C:44–1d and –1f(2), which impose a presumption of imprisonment for all first- and second-degree offenses, rather than the section 12 plea-bargaining statute that governs this case. 128 *N.J.* at 564–68, 608 *A.*2d 341. Nonetheless, our analysis in *Cannon* of separation of powers in sentencing is equally applicable to this discussion.

Cannon had been convicted of second-degree theft by deception and sentenced to five years imprisonment. After serving seven months in prison, she was released from prison and admitted into ISP. Because ISP exists to permit an inmate's early release from a custodial term, it is a "sentencing disposition, albeit a modification of sentence." *Id.* at 562, 608 *A.*2d 341.

We observed that such a modification of sentence conflicted with *N.J.S.A.* 2C:44–1d, which generally requires imprisonment for all first- and second-degree offenders. It provides that

[t]he court shall deal with a person who has been convicted of a crime of the first or second degree by imposing a sentence of imprisonment unless, having regard to the character and condition of the defendant, it is of the opinion that his imprisonment would be a serious injustice which overrides the need to deter such conduct by others.

If the sentence of a first- or second-degree offender is "noncustodial or probationary," then *N.J.S.A.* 2C:44–1f(2) allows the prosecutor to appeal the sentence. In resolving the conflict between

the statutes and defendant's early release into ISP, we deferred to the statutes. That the Legislature has primary power to determine the punishment for crimes is "simply one of the most basic understandings of the allocation of governmental powers among the three branches." *Cannon, supra,* 128 *N.J.* at 560, 608 *A.*2d 341.

By enacting *N.J.S.A.* 2C:44–1d, the Legislature created a presumption of imprisonment for first- and second-degree offenders. We held that when the Legislature explicitly mandates imprisonment, "this Court may not, as an 'alternative,' [through a court-administered program] order release." *Id.* at 563 n. 9, 608 *A.*2d 341. "[B]y 'imprisonment' the Legislature meant not simply the imposition of a sentence of imprisonment but service of the statutory sentence, conforming to the statutory mandate." *Id.* at 565, 608 *A.*2d 341.

That the imprisonment for the second-degree offense was imposed pursuant to a plea agreement did not affect *Cannon*'s outcome. A court cannot override the legislative presumption of imprisonment for all second-degree offenders by admitting a defendant into ISP, even when imprisonment was imposed pursuant to a plea agreement, in the absence of a clear legislative signal.

Both ISP and ECLIPSE are court-administered sentencing alternatives. Because they affect sentencing, they fall within an "area over which the Legislature has close to total power: the power to punish, to deter, to rehabilitate, including the power to restrict any variations on the methods and options available for those purposes." *Id.* at 563, 608 *A.*2d 341. Because of the Legislature's overriding authority in the area of sentencing, courts may not apply a non-legislative program in a manner that conflicts with a statute. Therefore, a court-administered program that conflicts with a statute exceeds the authority of the judiciary and violates separation of powers principles.

Furthermore, in *Cannon*, we determined that when the Legislature mandates a term of imprisonment for a crime, the Legisla-

ture generally intends not merely the imposition of a specific sentence of imprisonment but also service of that sentence. *Id.* at 565, 608 *A.*2d 341. Thus, we held that release into ISP would frustrate the legislative intent that first- and second-degree offenders be imprisoned. Likewise in Stewart's case, release into ECLIPSE would frustrate the legislative intent that defendants actually serve the sentence imposed pursuant to a plea agreement.

Defendant argues that *Cannon* is distinguishable. *N.J.S.A.* 2C:44–1d imposes a legislative presumption of imprisonment, whereas section 12 does not legislatively mandate custody but instead enables the prosecutor to determine an offender's custodial sentence. Such prosecutorial discretion, defendant argues, does not have the force of legislative mandate and thereby need be followed only at the original sentencing. That argument fails, however, because the court can achieve the legislative goal of encouraging cooperation between offenders and prosecutors only if the court enforces the agreement of the parties. Reforming a section 12 plea agreement even at a subsequent stage would frustrate the legislative intent. Section 12 is as much a legislative mandate entitled to enforcement as *N.J.S.A.* 2C:44–1(d), the statute central to *Cannon.*

Defendant also mistakenly relies on *Vasquez, supra,* to argue that a court is in fact permitted to "resentence" an offender after initially abiding by the terms of a plea agreement. The facts of *Vasquez* are different. In *Vasquez,* this Court held that "resentencing" that involved a change in the offender's custodial term imposed pursuant to a plea bargain was permissible once the defendant violated the terms of probation. We determined that the prosecutor's ability under section 12 to mold the actual sentence terminates once an offender violates the terms of the original agreement. 129 *N.J.* at 201, 609 *A.*2d 29.

We based our holding in *Vasquez,* however, on *N.J.S.A.* 2C:45–3b. That statute provides that a court resentencing a defendant for a violation of probation "may impose on the defendant any sentence that might have been imposed originally for the offense

for which he [or she] was convicted." The re-sentencing determination was within the court's, not the prosecutor's, discretion, pursuant to a statute requiring the court to weigh the aggravating and mitigating factors to determine the appropriate punishment. Our holding that a court could resentence a defendant after defendant violated the terms of his or her probation was, therefore, tied to the explicit legislative intent as expressed in *N.J.S.A.* 2C:45–3b.

▮ Defendant also argues that when he was admitted to ECLIPSE, he only had fifty-two more days to serve before he would have been paroled pursuant to *N.J.S.A.* 30:4–123. Parole eligibility after serving one-third of one's sentence is another *statutory* limit on the prosecutor's powers. Such release on parole, however, "is precisely what the Legislature intended." *Cannon, supra,* 128 *N.J.* at 566, 608 *A.2d* 341. Prosecutors are aware of that statutory provision and take it into account when negotiating plea agreements. The ECLIPSE program, in contrast, is a non-legislative-initiated program, and the rules for admittance into the program must yield to statutorily-mandated sentencing.

### III

In *Cannon,* we stayed our opinion to give the Legislature the opportunity to amend its statutes to permit the early release of first- and second-degree offenders into ISP. In response, the Legislature passed *L.* 1993, *c.* 123, which provided that under certain conditions, second-degree offenders could be eligible for the ISP program. If the Legislature determines that counties should have the discretion to shorten the custodial term of an inmate sentenced pursuant to a plea agreement, it can provide for that as well. Absent such an explicit legislative directive, however, a county may not circumvent the sentencing mandates of the State, which were originally imposed to foster uniformity in punishing criminals.

■ Once sentenced to a custodial term, a defendant must serve that term in the absence of a statute to the contrary. See *e.g. N.J.S.A.* 30:4–123.51a (permitting parole eligibility after serving one third of sentence).

The Appellate Division's order removing Stewart from the ECLIPSE program is hereby affirmed.

*For affirmance* —Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed* —None.