726 A.2d 912

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT AND
CROSS–APPELLANT, v. ANTHONY CALIGUIRI, DEFEN-
DANT–APPELLANT AND CROSS–RESPONDENT.

Argued February 2, 1999—Decided April 14, 1999.

30

*Cecelia Urban,* Assistant Deputy Public Defender, argued the cause for appellant and cross-respondent (*Ivelisse Torres,* Public Defender, attorney).

*Linda K. Danielson,* Deputy Attorney General, argued the cause for respondent and cross-appellant (*Peter Verniero,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

GARIBALDI, J.

In this appeal, the Court must determine if a prosecutor may refuse to admit a defendant to a Pretrial Intervention (PTI) Program solely because he is charged with possession of marijuana with intent to distribute within 1000 feet of school property. Under *N.J.S.A.* 2C:35-7, that crime is a third-degree offense carrying a mandatory term of imprisonment. Neither *R.* 3:28, *Guidelines for the Operation of Pretrial Intervention in New Jersey,* Pressler, *Current N.J. Court Rules,* comments on *R.* 3:28, (1999), or the Comprehensive Drug Reform Act ("CDRA") provide that *N.J.S.A.* 2C:35-7 offenders should be categorically ineligible for PTI. The policies underlying both the Guidelines and the CDRA, however, warrant treating *N.J.S.A.* 2C:35-7 as essentially equivalent to a second-degree offense for which PTI is presumptively unavailable. Because the prosecutor in this case considered the offender categorically ineligible, we remand the application to the prosecutor for reconsideration. On remand, the offender must show "compelling reasons" to obtain admission to PTI. We also affirm the Appellate Division's decision to invalidate part of the *Attorney General's Supplemental Directive for Prosecuting Cases Under the Comprehensive Drug Reform Act* ("*Attorney General's Directive*"), issued January 6, 1997.

I.

Early in the morning of April 4, 1996, defendant, Anthony Caliguiri parked in a lot in front of a Krauser's convenience store in South River, New Jersey. The lot is located within 1000 feet of a school. Police approached Caliguiri because his car stereo was playing too loudly. During the course of that encounter, police spotted marijuana on the front seat of Caliguiri's car. One officer

searched the interior of the car and uncovered an additional quantity of the drug and a box of Ziploc bags. Meanwhile, another officer questioned Caliguiri, who guided the officers to another large Ziploc bag of marijuana concealed in the trunk.

Caliguiri was taken to police headquarters. When questioned, he admitted that the bag contained 1.5 ounces of marijuana that he had purchased for $150. Caliguiri also volunteered the name of the seller and the location of the sale. He told police that he had intended to use most of the marijuana himself, but that he would have given some to his close friends. Caliguiri denied intending to sell the drugs. A grand jury indicted Caliguiri on three counts, including third-degree possession with the intent to distribute within 1000 feet of school property, a violation of *N.J.S.A.* 2C:35–7.

Caliguiri applied for admission to the Middlesex County Pretrial Intervention Program. He had an absolutely unblemished record, a job, and good family support. As the prosecutor acknowledged, Caliguiri satisfied all of the applicable criteria of the statute and Guidelines with the exception of the nature of the offense. Nevertheless, his application was rejected by the criminal division manager. In evaluating the application, the criminal division manager noted that "the seriousness of the offense is weighed heavily," and that Caliguiri's "offense [was] to [sic] serious too [sic] be considered for PTI. This offense carries a presumption of incarceration." The trial court reversed the decision, subject to review by the Middlesex County Prosecutor's Office.

The Prosecutor's Office denied Caliguiri PTI. In a letter dated October 10, 1996, the prosecutor wrote:

> This office was requested to review the application by making an analysis of his potential for rehabilitation, amenability to correction and the nature of the offense involved, based upon the information already present in our file and the report of the PTI program.... In the course of this analysis, all positive and favorable factors have been taken into account.

In rejecting Caliguiri's application, the prosecutor relied on a purported legislative belief that drug offenses near a school were "deserving of enhanced punishment" and "too serious for Pre–Trial Intervention."

The trial court ordered Caliguiri's admission to PTI over the prosecutor's objection. The prosecutor argued that all relevant factors had been considered, and that no mitigating factors outweighed the nature of the offense. When questioned by the court, the prosecutor did not identify any additional factors to support the decision to deny PTI. The court determined that the prosecutor denied Caliguiri's application solely because defendant committed a school zone offense. Because the Legislature designated *N.J.S.A.* 2C:35–7 a third-degree crime, the court held that the prosecutor could not base his rejection solely on the nature of the offense. Finding Caliguiri otherwise amenable to rehabilitation, the court concluded that the prosecutor's rejection represented a clear error in judgment.

The State appealed. The Appellate Division held PTI presumptively unavailable to defendants charged under *N.J.S.A.* 2C:35–7. 305 *N.J.Super.* 9, 701 *A.*2d 920 (1997) (*"Caliguiri I "*). However, because the prosecutor considered Caliguiri categorically ineligible for PTI, the court ordered a remand to allow Caliguiri the opportunity to rebut the presumption against admission.

We granted the State's petition for certification, 152 *N.J.* 186, 704 *A.*2d 16 (1997), and summarily remanded the case to the Appellate Division for reconsideration in light of Section 8 of the *Attorney General's Directive.* Section 8 provides, in relevant part, that county prosecutors "shall object" to any PTI applications by persons charged under *N.J.S.A.* 2C:35–7 "unless the prosecutor determines that the proofs available for trial would not sustain a conviction of that charge." *Ibid.* The *Attorney General's Directive* also required the prosecutor to appeal any adverse ruling on those applications.

On remand, the Appellate Division again ordered reconsideration of Caliguiri's application. 308 *N.J.Super.* 214, 705 *A.*2d 1216 (1998) (*"Caliguiri II "*). Relying on this Court's statement in *State v. Baynes,* 148 *N.J.* 434, 449, 690 *A.*2d 594 (1997), the court again concluded that violating *N.J.S.A.* 2C:35–7 was analogous to committing a second-degree offense, for which PTI is presump-

tively unavailable. In response to the State's argument that there was no standard to determine whether Caliguiri's presumptive ineligibility had been rebutted, the court adopted the "serious injustice" standard provided by *N.J.S.A.* 2C:44–1d.

We granted the petitions for certification of Caliguiri and the State. 155 *N.J.* 587, 715 *A.2d* 990 (1998).

## II.

### A.

Pretrial intervention is a discretionary program diverting criminal defendants from formal prosecution. *N.J.S.A.* 2C:43–12a(1); *R.* 3:28, Pressler, *supra, Guidelines* 1(a). PTI formalized the discretion often employed by prosecutors and law enforcement officials in selecting charges against a specific offender. Note, *Criminal Justice–Pretrial Intervention Programs–An Innovative Reform of the Criminal Justice System*, 28 *Rutgers L.Rev.* 1203, 1205–06 (1975).

In *State v. Leonardis*, 71 *N.J.* 85, 92–96, 363 *A.2d* 321 (1976) ("*Leonardis I* "), we conducted an extensive review of the history of PTI in New Jersey. In its current form, the PTI program is governed by the reciprocal terms of *N.J.S.A.* 2C:43–12 and *R.* 3:28. The Guidelines and the statute list the five goals of the PTI program: (1) providing offenders with early rehabilitation, if that service will deter future criminal conduct; (2) offering an alternative to offenders who would be harmed by traditional prosecution; (3) providing a less burdensome prosecution for offenders charged with "victimless" offenses; (4) assisting prosecutors in pursuing serious criminal matters by removing less serious cases from the criminal calendar; and (5) deterring future criminal conduct by PTI participants. *N.J.S.A.* 2C:43–12a(1)–(5); Pressler, *supra, Guidelines* 1(a)–(e). This Court has also repeatedly emphasized the role of PTI in augmenting the criminal justice system and enhancing the prosecutor's options. *State v. Wallace*, 146 *N.J.* 576, 581, 684 *A.2d* 1355 (1996); *State v. Nwobu*, 139 *N.J.* 236, 240–

41, 652 *A*.2d 1209 (1995); *State v. Dalglish*, 86 *N.J.* 503, 509, 432 *A*.2d 74 (1981).

■ Any defendant charged with a crime is eligible for PTI. Pressler, *supra*, *Guidelines* 2. The Guidelines and the statute, however, provide the prosecutor and criminal division manager with specific criteria to apply in reviewing a PTI application. *N.J.S.A.* 2C:43–12e(1)–(17); Pressler, *supra*, *Guidelines* 3. Included in those criteria are the nature of the offense, the circumstances of the crime, the motivation and age of the defendant, and the needs and interests of the victim and society. *N.J.S.A.* 2C:43–12e(1)–(3),(7); *Guidelines* 3.

■ This Court has held that a prosecutor may, in appropriate circumstances, reject an applicant solely because of the nature of the offense. *State v. Leonardis*, 73 *N.J.* 360, 382, 375 *A*.2d 607 (1977)("*Leonardis II* "). The PTI Guidelines recognize this limitation. If a crime is

(1) part of organized criminal activity; or (2) part of a continuing criminal business or enterprise; or (3) deliberately committed with violence or threat of violence against another person; or (4) a breach of the public trust where admission to a PTI program would depreciate the seriousness of defendant's crime, the defendant's application should generally be rejected. A defendant charged with a first or second degree offense or sale or dispensing of Schedule I or II narcotic drugs . . . should ordinarily not be considered for enrollment in a PTI program.

[Pressler, *supra*, *Guidelines* 3(i).]

Applying this language, we have concluded that it is appropriate to reject a PTI application because of the nature of the offense when the Guidelines express a presumption against PTI. *Baynes*, *supra*, 148 *N.J.* at 445–47, 690 *A*.2d 594. Where the Guidelines express a presumption of ineligibility, a defendant must show "compelling reasons" to be admitted to PTI. Pressler, *supra*, *Guidelines* 3(i); *State v. Nwobu*, *supra*, 139 *N.J.* at 252–53, 652 *A*.2d 1209.

■ If the prosecutor refuses an application for PTI, then a written statement of reasons must be provided. Pressler, *supra*, *Guidelines* 8. A clear statement of reasons fosters effective judicial review and allows the offender a meaningful opportunity to challenge the rejection. *Nwobu*, *supra*, 139 *N.J.* at 249, 652 *A*.2d

1209. The written rejection, therefore, may not simply "parrot" the language of relevant statutes. *State v. Sutton*, 80 *N.J.* 110, 117, 402 *A.*2d 230 (1979).

The decision to divert an offender from prosecution is analogous to the prosecutor's charging function and involves the implicit exercise of judicial power; therefore, judicial review is permitted. *Nwobu, supra*, 139 *N.J.* at 245, 652 *A.*2d 1209. However, the power of judicial review is tightly circumscribed. *State v. DeMarco*, 107 *N.J.* 562, 566, 527 *A.*2d 417 (1987). The court must find that the prosecutor based a decision on an inappropriate factor, failed to mention a relevant factor, or so inappropriately weighed the relevant factors that the decision amounts to a "patent and gross abuse of discretion." *Wallace, supra*, 146 *N.J.* at 584, 684 *A.*2d 1355. However, in cases of less egregious error on the prosecutor's part, for example, if a prosecutor fails to consider all the relevant factors or considers inappropriate factors, a court may remand the matter for further consideration. *State v. DeMarco, supra*, 107 *N.J.* at 566–67, 527 *A.*2d 417.

### B.

Caliguiri was charged with violating *N.J.S.A.* 2C:35–7, which criminalizes possession with the intent to distribute within a 1000 feet of a school. This crime was created in 1986 by the Comprehensive Drug Reform Act.

The CDRA was designed to create a coordinated strategy to combat illegal drug use in New Jersey. W. Cary Edwards, *An Overview of the Comprehensive Drug Reform Act of 1987*, 13 *Seton Hall Legis. J.* 5, 5 (1989)("*CDRA Overview*"). The CDRA contains a statement of policy, which expresses a desire for uniform and stern punishment of drug offenders convicted of operating near schools. *N.J.S.A.* 2C:35–1.1a,c. The CDRA effectively creates a "safety zone" of 1000 feet around schools and school property. *1987 Legislative Commentary, reprinted in* Cannel, *New Jersey Criminal Code Annotated*, comment 1 to *N.J.S.A.* 2C:35–7. Because of those policies, offenders convicted

of violating *N.J.S.A.* 2C:35–7 are subject to a mandatory period of incarceration and parole ineligibility.

Despite the policy favoring stern punishment, the CDRA provides a number of alternative sentencing possibilities for drug offenders. *N.J.S.A.* 2C:35–14 allows the court to order rehabilitative treatment for drug-dependent offenders convicted of any CDRA offense, except crimes of the first degree. *N.J.S.A.* 2C:35–14a. Under the rehabilitative program, *N.J.S.A.* 2C:35–7 and second-degree offenders are committed to a residential treatment program for at least six months. *N.J.S.A.* 2C:35–14c. The CDRA also contains a conditional discharge statute that allows prosecutors to dismiss charges against some first offenders. *N.J.S.A.* 2C:36A–1.

In addition to increasing the penalties for serious drug offenders and creating "safety zones" around schools, the CDRA incorporated the new drug laws into the sentencing structure of the New Jersey Code of Criminal Justice. *CDRA Overview, supra,* 13 *Seton Hall Legis. J.* at 11. As a result of this incorporation,

every drug offense will be designated as a crime of a certain specified degree, thereby invoking all the sentencing provisions found in the penal code.... In assigning degree classifications to specific drug offenses, the provisions of the Act were carefully tailored to reflect the realities of current distribution and use patterns, as well as modern notions of the relative seriousness of each offense.

[*Id.* at 12.]

*N.J.S.A.* 2C:35–7 is a third-degree crime.

## III.

### A.

In *Baynes,* this Court referred to *N.J.S.A.* 2C:35–7, characterizing "[t]he penalty structure for this type of offense [as] similar to that for second-degree offenses for which admission to PTI is presumptively unavailable." *Baynes, supra,* 148 *N.J.* at 449, 690 *A.*2d 594. The State argues that if a defendant is *presumptively* ineligible for PTI for committing a crime that carries the second-degree *presumption* of incarceration, then a defendant must be

*completely* ineligible for PTI when the crime, like *N.J.S.A.* 2C:35–7, *requires* incarceration. Furthermore, the State contends that the CDRA implicitly repealed the portion of the PTI Guidelines allowing diversion for all defendants. We disagree.

The PTI Guidelines make diversion available to all defendants. Pressler, *supra, Guidelines* 2; *State v. Bender,* 80 *N.J.* 84, 93, 402 *A.*2d 217 (1979). Even offenders charged with violent or first-degree offenses are not categorically ineligible. Pressler, *supra, Guidelines* 3(i) (stating that such applications "should generally be rejected"). The Guidelines require the prosecutor to evaluate each application individually. *State v. Poinsett,* 206 *N.J.Super.* 307, 313, 502 *A.*2d 578 (Law Div.1984) (stressing importance of individual evaluation). Failure to provide "comprehensive and flexible" evaluation "undermine[s] the efficacy of PTI." *Leonardis I, supra,* 71 *N.J.* at 100, 363 *A.*2d 321. The nature of the PTI program suggests that categorical rejections must be disfavored.

The State relies on the legislative intent of the CDRA to overcome the PTI Guidelines. In particular, the State asserts that the CDRA mandates severe and consistent punishment for drug offenders. *N.J.S.A.* 2C:35–1.1c. As a result, the State concludes that the stern punishments of the CDRA are "fatally inconsistent" with general eligibility for PTI.

A careful reading of the CDRA and related precedent demonstrates, however, that the Legislature did not intend to preclude drug offenders from PTI. The CDRA's statement of legislative policy, for example, specifically refers to severe punishment for "convicted offenders." *N.J.S.A.* 2C:35–1.1a. The CDRA intends severe punishment for convicted offenders, but does not preclude PTI, which diverts offenders prior to a criminal trial. For example, defendants charged with violating *N.J.S.A.* 2C:35–7 are ineligible for youthful offender sentencing. *State v. Luna,* 278 *N.J.Super.* 433, 651 *A.*2d 483 (App.Div.1995). In *Luna,* the defendant pled guilty to three counts of possession with the intent to distribute in a school zone. *Id.* at 435, 651 *A.*2d 483. The State

did not waive the statutory period of parole ineligibility. *Ibid.* The trial court nonetheless sentenced the defendant as a youthful offender under *N.J.S.A.* 2C:43–5, which allows defendants under twenty-six to be sentenced to an indeterminate term at the Youth Correctional Complex. *Id.* at 436, 651 *A.*2d 483. The Appellate Division reversed the sentence, concluding that the purpose of the CDRA, to deter drug trafficking through mandatory parole ineligibility, was inconsistent with the Youthful Offender Sentencing Act. *Id.* at 438, 651 *A.*2d 483.

Similarly, in *State v. Stewart,* 136 *N.J.* 174, 642 *A.*2d 942 (1994), this Court held an offender convicted under *N.J.S.A.* 2C:35–7 ineligible for the Essex County Local Intensive Probation Supervision Effort ("ECLIPSE"). The ECLIPSE program allowed certain offenders to be released from prison and subjected to a highly regulated probationary term. *Stewart, supra,* 136 *N.J.* at 178, 642 *A.*2d 942. Stewart pled guilty to violating *N.J.S.A.* 2C:35–7, and was sentenced to 364 days in prison and two years probation. *Id.* at 175, 642 *A.*2d 942. Two months later, the court released Stewart into the ECLIPSE program. *Id.* at 176, 642 *A.*2d 942. This Court concluded that Stewart had been improperly admitted to the program because sentencing alternatives like ECLIPSE were inconsistent with *N.J.S.A.* 2C:35–12, which requires a court in a CDRA prosecution to impose precisely the sentence prescribed by the plea agreement. *Id.* at 179, 642 *A.*2d 942.

The CDRA allows drug-dependent defendants to be placed in residential treatment programs. *N.J.S.A.* 2C:35–14. The State argues that this strictly regulated rehabilitation program demonstrates that the Legislature did not want CDRA offenders to participate in less rigorously supervised PTI programs. This treatment option, however, applies only to convicted offenders:

Notwithstanding the presumption of incarceration ... *whenever a drug dependent person is convicted* of an offense [under the CDRA], other than a crime of the first degree, the court, upon notice to the prosecutor, may, on motion of the defendant and where the court finds that no danger to the community will result and that the placement will benefit the defendant by serving to correct his or her dependency on controlled substances, place the defendant on probation, which shall be for a term of five years.

[*N.J.S.A.* 2C:35–14a (emphasis added).]

Both *Stewart* and *Luna* involved defendants who had already pled guilty under *N.J.S.A.* 2C:35–12 plea agreements. The rehabilitation program of *N.J.S.A.* 2C:35–14 applies only after conviction; therefore, it most likely was intended to replace intensive supervision post-conviction programs like ECLIPSE, and not PTI. The legislative history supports that conclusion by expressly rendering defendants who fail to complete the *N.J.S.A.* 2C:35–14 program ineligible for other intensive supervision programs. *1987 Legislative Commentary reprinted in* Cannel, *supra*, comment to *N.J.S.A.* 2C:35–14. Post-conviction sentencing alternatives not only contradict the legislative intent underlying the CDRA, but also utterly subvert the punishments imposed by statute. PTI, however, intervenes prior to conviction. In fact, the Guidelines prohibit prosecutors from conditioning access to the program on any admission of guilt. Pressler, *supra*, *Guidelines* 4. Thus, PTI admissions are unaffected by the CDRA's rejection of post-conviction sentencing alternatives.

Despite the overall intent to impose severe punishment, the CDRA preserves programs that apply prior to conviction. Conditional discharge remains available to offenders "charged with or convicted of any disorderly persons or petty disorderly persons offense." *N.J.S.A.* 2C:36A–1. However, offenders charged with indictable offenses are specifically excluded from the conditional discharge program. *N.J.S.A.* 2C:36A–1a. The State argues that that exclusion evinces a legislative intent to both supplant and preclude PTI in CDRA prosecutions. The legislative history suggests otherwise. Conditional discharges were meant to supplement, rather than supplant PTI. *1987 Legislative Commentary reprinted in* Cannel, *supra*, comment 1 to *N.J.S.A.* 2C:36A–1 (stating that "[t]o consolidate New Jersey's drug laws into the penal code, this act eliminates conditional discharge for drug offenders accused of indictable crimes, and provides instead that the diversion of these criminal proceedings be accomplished through the pretrial intervention program.").

Although the CDRA prohibits post-conviction sentencing alternatives, it expressly countenances PTI, which intervenes prior to trial. That distinction prevents us from finding pre-trial diversion and mandatory incarceration "fatally inconsistent." Nothing in either the PTI Guidelines or the CDRA reveals any intent to categorically exclude *N.J.S.A.* 2C:35–7 offenders from PTI.

■ Although *N.J.S.A.* 2C:35–7 offenders are not categorically ineligible for PTI, there is a presumption against diversion. The PTI Guidelines allow a prosecutor to reject an application solely based on the nature of the offense in "appropriate circumstances." *Baynes, supra,* 148 *N.J.* at 445, 690 *A.2d* 594; *Leonardis II, supra,* 73 *N.J.* at 382, 375 *A.2d* 607. *See* Pressler, *supra, Guidelines* 3(i) (providing PTI applications "should generally be rejected" when underlying offense involves continuing criminal enterprise, organized criminal activity, breach of public trust, violence or threat of violence, or first- or second-degree offense). The enumerated circumstances represent a legislative decision to prevent serious offenders from avoiding prosecution in ordinary circumstances.

The policy underlying the CDRA demonstrates that violating *N.J.S.A.* 2C:35–7 is a serious offense. *Baynes, supra,* 148 *N.J.* at 449, 690 *A.2d* 594. The defendant in *Baynes* was charged with simple possession within 1000 feet of a school. *Id.* at 439, 690 *A.2d* 594. The PTI program director recommended Baynes for admission to the program. *Ibid.* The prosecutor rejected the application, because his policy prohibited consent to PTI applications from school zone offenders. *Id.* at 440, 690 *A.2d* 594. We held that the prosecutor's *per se* rule could not be justified by the "appropriate circumstances" clause of Guideline 3(i), because "appropriate circumstances" existed only in cases "of a more serious nature than possession of CDS for personal use." *Id.* at 445, 690 *A.2d* 594. We specifically distinguished possession for personal use from possession with the intent to distribute. *Id.* at 449, 690 *A.2d* 594. We observed that to enforce the policies underlying the CDRA, "the Legislature created a new crime, *N.J.S.A.* 2C:35–

■■■■■■■■■■■■■■■■■■■■■■

7. . . . The penalty structure for this type of offense is similar to that for second-degree offenses for which admission to PTI is presumptively unavailable." *Ibid.*

■■■ Although the Legislature established *N.J.S.A.* 2C:35–7 as a third-degree crime, its especially stern punishments indicate that the Legislature considered it a serious crime. In light of the general tenor of the CDRA and the goals of the PTI Guidelines, we hold that prosecutors may treat *N.J.S.A.* 2C:35–7 as equivalent to a second-degree offense and consider PTI presumptively unavailable.

### B.

The Appellate Division concluded that the prosecutor had categorically rejected Caliguiri's application, and that Caliguiri was only presumptively ineligible for PTI. The court remanded the case to allow Caliguiri the opportunity to show that denial of his application would result in a "serious injustice."

■■■■■■ A court may remand a PTI application to the prosecutor if the remand will serve a useful purpose and the decision to reject that application is arbitrary, irrational, or an abuse of discretion. *Dalglish, supra,* 86 *N.J.* at 509, 432 *A.2d* 74. In this case, the prosecutor categorically rejected Caliguiri's application. Caliguiri was only presumptively ineligible for PTI. The prosecutor stated that "all positive and favorable factors have been considered," but relied exclusively on the nature of the offense to deny PTI. The State now argues that Caliguiri cannot show "compelling reasons" for his admission, because the prosecutor considered the school zone offense too serious for PTI. The State misunderstands the nature of the inquiry. The school zone statute creates the presumption against PTI, and cannot also provide the reason Caliguiri fails to overcome that presumption. To endorse the State's position would effectively create a *de facto* rule against PTI for *N.J.S.A.* 2C:35–7 offenders. Rejection based solely on the nature of the offense is appropriate only if the offender fails to rebut the presumption against diversion.

A remand is appropriate because the prosecutor failed to consider all the relevant factors. Caliguiri's application was rejected solely because he committed a school zone offense. The State asserts that the prosecutor's rejection letter demonstrates that all relevant factors were considered, and no "compelling reasons" were found. The prosecutor in *Baynes* made a similar claim. *Baynes, supra,* 148 *N.J.* at 440, 690 *A.*2d 594. In *Baynes,* we concluded that all the relevant factors could not sufficiently have been considered, because the *per se* rule prohibited the prosecutor from accepting any PTI application. *Id.* at 444–45, 690 *A.*2d 594. In other words, a prosecutor applying an inappropriate *per se* rule necessarily fails to consider all the relevant factors. In this case, the prosecutor considered Caliguiri categorically ineligible for PTI, because he was charged under *N.J.S.A.* 2C:35–7. In fact, the prosecutor conceded to the Law Division that Caliguiri was an appropriate candidate for PTI, but for the school zone offense. Because the prosecutor failed adequately to consider all the factors relevant to Caliguiri's PTI application, the Appellate Division properly remanded the case.

On remand, Caliguiri must show "compelling reasons" to permit his admission to PTI. The Appellate Division improperly required Caliguiri to show that failure to admit him to PTI would constitute a "serious injustice." That standard was drawn from *N.J.S.A.* 2C:44–1d, which establishes a presumption of incarceration for defendants convicted of second-degree offenses. For defendants seeking PTI, however, the Guidelines expressly provide a "compelling reasons" standard. Pressler, *supra, Guidelines* 3(i). Caliguiri need only show "compelling reasons" to rebut the presumption against PTI. *See Nwobu, supra,* 139 *N.J.* at 252–53, 652 *A.*2d 1209 (discussing what constitutes "compelling reasons"). However, when a defendant is charged with a third-degree offense and the prosecutor has the discretion to waive incarceration, the weight of the evidence to rebut the presumption against PTI need not be as great as if the defendant had been charged with a second-degree offense.

## C.

Finally, the Appellate Division invalidated the *Attorney General's Directive,* which then required prosecutors to reject the PTI applications of *N.J.S.A.* 2C:35-7 offenders. The State relies on our recent decision in *State v. Brimage,* 153 *N.J.* 1, 706 *A.*2d 1096 (1998), to defend the Directive. In *Brimage,* this Court invalidated Directives permitting each county to develop its own standardized CDRA plea offers and policies. *Id.* at 14–15, 706 *A.*2d 1096. We held those Directives permitted an intercounty disparity in sentencing incompatible with the CDRA's goals of strict and consistent punishment. *Id.* at 22–23, 706 *A.*2d 1096. Unlike *Brimage,* however, this case does not involve a sentencing issue. Because the CDRA intended lesser constraints on PTI applications than sentencing determinations, concerns about intercounty disparity are diminished.

In *Baynes,* we upheld a Directive prohibiting prosecutors from consenting to PTI for CDRA offenders unless the defendant met specific community service requirements and paid a fine. *Baynes, supra,* 148 *N.J.* at 450, 690 *A.*2d 594. We distinguished that Directive from the prosecutor's *per se* rule:

> [T]he Directive embodies a conscious policy choice by the Attorney General: allow PTI candidates charged with simple possession in a school zone into PTI, but only if they satisfy the mandatory non-incarcerative aspects of the program.
>
> [*Ibid.*]

In this case, the *Attorney General's Directive* is not consistent with the established requirements for PTI. Instead, this Directive inappropriately alters the criteria for admission to PTI, which are jointly governed by statute and court rule.

The judgment of the Appellate Division is affirmed and modified in accordance with this opinion.

STEIN, J., concurring in part and dissenting in part.

Defendant, a gainfully employed twenty-five-year-old with no prior convictions, was indicted for third-degree possession of

marijuana with intent to distribute within 1000 feet of school property. The indictment's reference to distribution was based on defendant's admission that he would share the 1.5 ounces of marijuana with some friends, not on the basis of an intent to sell the drugs. After Caliguiri applied for admission to the Middlesex County Pretrial Intervention (PTI) program, the prosecutor acknowledged that, apart from the nature of the offense, Caliguiri satisfied all the criteria for admission to that program. He had an unblemished record, good family support, a job, and appeared to be amenable to rehabilitation. In addition, Caliguiri had cooperated with the police by volunteering the name of the seller and the location of the sale. Nonetheless, the State opposed defendant's admission to PTI on the ground that third-degree school-zone drug offenders were categorically ineligible for PTI.

The Court's disposition offers defendant some hope of admission to PTI because the Court properly rejects the State's contention that third-degree school-zone drug offenders are categorically ineligible for PTI. But the faint promise of PTI the Court extends with one hand it retracts substantially with the other by its holding that third-degree school-zone offenders, just like second-degree offenders, must be considered *presumptively* ineligible for PTI, a presumption so strong that it can be overcome only by "compelling reasons" consisting of evidence of "something extraordinary or unusual, something 'idiosyncratic,' in [the defendant's] background." *State v. Nwobu*, 139 *N.J.* 236, 252, 652 *A.*2d 1209 (1995) (quoting *State v. Jabbour*, 118 *N.J.* 1, 7, 570 *A.*2d 391 (1990)). I join the Court's disposition to the extent that it rejects the State's position that third-degree school-zone offenders are categorically ineligible for PTI. But I cannot join in its holding that third-degree offenders are presumptively ineligible for PTI.

I

I concur with the majority's conclusion that defendants charged with third-degree school-zone offenses are not categorically ineligi-

ble for PTI. As the majority correctly notes, "[d]espite the overall intent to impose severe punishment, the CDRA preserves programs that apply prior to conviction." *Supra* at 41, 726 *A.*2d at 919. Thus, the possibility of PTI admission as an alternative to formal prosecution remains "unaffected by the CDRA's rejection of post-conviction sentencing alternatives," *ibid.*, even where, as here, an offender is subject to a mandatory term of imprisonment upon conviction.

As the majority's decision makes clear, whether a specific offense carries a presumption against PTI admission is unrelated to the severity of the post-conviction sentencing alternatives. Presumptive ineligibility arises only "when the Guidelines express a presumption against PTI" for that particular offense. *Supra* at 36–37, 726 *A.*2d at 916–917 (noting that PTI Guideline 3(i) states that PTI applications "should generally be rejected" when underlying offense involves continuing criminal enterprise, organized criminal activity, breach of public trust, violence or threat of violence, or first- or second-degree offense). "The *enumerated circumstances*" for which PTI is presumptively unavailable "represent a legislative decision to prevent serious offenders from avoiding prosecution in ordinary circumstances." *Supra* at 42, 726 *A.*2d at 919 (emphasis added). Third-degree school-zone offenses, as the majority concedes, are not among the crimes singled out by the Guidelines for presumptive PTI ineligibility.

Despite its recognition that neither the severity of post-conviction sentencing alternatives nor the PTI Guidelines create a presumption against PTI admission for third-degree offenders, the majority concludes that third-degree school-zone offenders are presumptively ineligible for PTI. *Supra* at 43, 726 *A.*2d at 920. In the absence of any legislative support for its conclusion, the majority relies on "[t]he policy underlying the CDRA [which] demonstrates that violating *N.J.S.A.* 2C:35–7 is a serious offense." *Supra* at 42, 726 *A.*2d at 919. However, the only evidence cited by the Court in illustration of that policy is the "especially stern

punishments" that adhere upon conviction. *Supra* at 43, 726 *A*.2d at 920. The Court reasons that because "[t]he penalty structure for this type of offense is similar to that for second-degree offenses for which admission to PTI is presumptively unavailable," *ibid.* (quoting *State v. Baynes*, 148 *N.J.* 434, 449, 690 *A*.2d 594 (1997)), third-degree school-zone offenders, like all second-degree offenders, must also be presumptively ineligible for PTI admission.

I disagree with that reasoning. First, there is little practical distinction between the majority's holding that school-zone offenders are presumptively ineligible for PTI and the State's contention that they are categorically ineligible for that program. Both the majority and the State rely unpersuasively on the sentencing alternatives after trial and conviction to support a presumptive or categorical ineligibility for pre-trial diversion into PTI.

Moreover, to the extent that PTI ineligibility is a function of the "seriousness" of the crime, the Legislature's very designation of school-zone offenses as crimes of the third degree demonstrates a legislative determination that such offenses are not the equivalent of second-degree crimes in terms of the "seriousness" of the underlying conduct. See *supra* at 38, 726 *A*.2d at 917; *see also* W. Cary Edwards, *An Overview of the Comprehensive Drug Reform Act of 1987*, 13 *Seton Hall Legis. J.* 5, 12 (1989) (noting that Legislature designated every drug offense as "crime of a certain specified degree ... to reflect the realities of current distribution and use patterns, as well as modern notions of the relative seriousness of each offense").

Even the Court's underlying premise that the "penalty structures" for third-degree school-zone and second-degree offenses are "similar" fails to withstand close scrutiny. As we noted in *State v. Brimage*, 153 *N.J.* 1, 8–9, 706 *A*.2d 1096 (1998), the "nondiscretionary" parole bar of *N.J.S.A.* 2C:35–7 (Section 7) is in reality subject to waiver in the broad discretion of the prosecutor as part of a plea or post-conviction agreement. See *N.J.S.A.* 2C:35–12 (Section 12). Because mandatory sentences, by definition, foreclose

judicial or prosecutorial discretion, we have observed that the sentencing scheme under Sections 7 and 12 is not truly mandatory but must be characterized as "a hybrid, combining mandatory and discretionary features and delegating sentencing authority to both the courts and the prosecutors." *Brimage, supra,* 153 *N.J.* at 8–9, 706 *A.*2d 1096 (quoting *State 'v. Vasquez,* 129 *N.J.* 189, 199, 609 *A.*2d 29 (1992)). In contrast, the CDRA permits virtually no discretion to waive the presumption of incarceration for convicted second-degree offenders, see *N.J.S.A.* 2C:44–1(d), and allows such offenders to avoid incarceration "only in 'truly extraordinary and unanticipated circumstances.'" *State v. Soricelli,* 156 *N.J.* 525, 533, 722 *A.*2d 95 (1999) (quoting *State v. Roth,* 95 *N.J.* 334, 358, 471 *A.*2d 370 (1984)).

That the Legislature deliberately chose to afford prosecutors broad discretion to waive the mandatory term in the case of convicted third-degree offenders, while almost entirely foreclosing that discretion in the case of second-degree offenders, demonstrates that the penalty structures for the two classes of offenses are in fact very different. Accordingly, any superficial "similarities" between the two sentencing schemes, I believe, do not justify the majority's upgrading of third-degree school-zone offenses for the sole purpose of withholding the possibility of PTI from an entire class of lower-level offenders.

The harshness of the majority's treating these third-degree offenses as crimes of the second degree for PTI purposes is not at all tempered by its holding that on remand Caliguiri need "only" show compelling reasons for admission. The Court is technically correct in that the "serious injustice" standard applies to second-degree offenders seeking to overcome the presumption of incarceration, while the "compelling reasons" standard is applicable when overcoming a presumption against PTI admission. However, as we held in *Nwobu, supra,* in order to show sufficient "compelling reasons" to overcome a presumption against PTI admission, "a defendant must demonstrate something extraordinary or unusual, something 'idiosyncratic,' in his or her back-

ground" in order to overcome a presumption against admission into PTI. *Nwobu, supra,* 139 *N.J.* at 252, 652 *A.*2d 1209 (quoting *Jabbour, supra,* 118 *N.J.* at 7, 570 *A.*2d 391). That is the identical showing required of a second-degree offender attempting to overcome a presumption of incarceration, a standard recently recognized by this Court in *Soricelli, supra,* 156 *N.J.* at 532–34, 722 *A.*2d 95, as being for all practical purposes insurmountable in the vast majority of cases. The Court's vague concession that "the weight of the evidence to rebut the presumption against PTI need not be as great as if the defendant had been charged with a second-degree offense," *supra* at 44, 726 *A.*2d at 920, is likely to provide small comfort to Caliguiri and similarly situated defendants.

The Court's establishment of a new class of lower-level offenders for whom PTI is presumptively unavailable will inevitably lead to the unwarranted incarceration of many defendants who would otherwise appear to be the most suitable for diversion into PTI. The majority's decision thus undermines the dual underlying purposes of PTI to afford rehabilitative services to appropriate candidates and to relieve the already overburdened criminal justice system by avoiding the prosecution of "victimless" offenses, freeing the courts and prosecutors to pursue more serious criminal matters. See *Nwobu, supra,* 139 *N.J.* at 247, 652 *A.*2d 1209. Because I believe that nothing in the current statutes or PTI Guidelines requires such a result, I respectfully dissent.

*Concurring in part; dissenting in part*—Justice STEIN—1.

*For affirmance and modification*—Chief Justice PORITZ and Justices POLLOCK, O'HERN, GARIBALDI, and COLEMAN—5.