**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3719-19

LETTIE CARSTARPHEN,

    Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____

Submitted September 13, 2022 – Decided September 16, 2022

Before Judges Sumners and Geiger.

On appeal from the New Jersey Department of Corrections.

Lettie Carstarphen, appellant pro se.

Matthew J. Platkin, Acting Attorney General, attorney for respondent (Donna Aarons, Assistant Attorney General, of counsel; Raajen V. Bhaskar, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Lettie Carstarphen, an inmate at the Edna Mahan Correctional Facility (EMCF), appeals from the April 17, 2020 final decision of respondent New Jersey Department of Corrections (NJDOC) upholding a hearing officer's finding that she committed prohibited acts *.803/*.002, "attempting to commit, aiding another person to commit or making plans to commit" an assault of another person, and .709, "failure to comply with a written rule or regulation of the correctional facility,"[1] in violation of N.J.A.C. 10A:4-4.1(a).[2] We affirm.

We take the following facts from the record. On April 7, 2020, NJDOC staff received a request from appellant's mother that appellant be medically evaluated because appellant claimed she was losing her sense of smell.[3] Staff removed appellant from the Administrative Segregation Yard and began

---

[1] The .709 charge relates to the same incident as the *.803/*.002 charge.

[2] Based on a different incident, appellant was also charged and found to have committed prohibited acts *.002, "assaulting any person" and *.050 "sexual assault or abuse." While this appeal was pending, the NJDOC moved to remand the *.002 and *.050 charges. We granted the motion. On remand, those charges were dismissed by the NJDOC for lack of evidence and the appeal of adjudication of guilt of those charges was dismissed by order dated March 4, 2022. Accordingly, we do not address those dismissed charges in this opinion.

[3] "Temporary loss of smell, or anosmia, is the main neurological symptom and one of the earliet and most commonly reported indicators of COVID-19 . . . ." Kevin Jang, How COVID-19 Causes Loss of Smell, (July 24, 2020), https://hms.harvard.edu/news/how-covid-19-causes-loss-of-smell.

escorting her to the medical unit for assessment. During the escort, appellant became agitated and belligerent and questioned the basis for her medical assessment. Upon arrival at the medical unit, appellant remained uncooperative and would not allow medical staff to conduct the assessment. While attempting to move appellant to a sitting area, appellant stated that she "ain't going no f**king where" and asked NJDOC staff whether they were "scared [they would] catch COVID." At one point, appellant attempted to spit on Senior Correctional Police Officer (SCPO) Williams, who was standing "approximately four feet away." Appellant repeatedly stated she wanted to fight Williams. Appellant then "intentionally and forcefully coughed four times in [Williams's] direction," stating she "hope[d]" Williams would "die."

Appellant remained seated, refusing to comply with repeated commands from NJDOC staff "to stand up and walk." Lieutenant Molina then sprayed appellant with O.C. spray. Appellant then complied with commands to stand and walk. Appellant was escorted to a control point to be decontaminated and was then returned to her cell without further incident. On April 8, 2020, appellant was charged with prohibited act *.002. The next day, NJDOC staff served appellant with the disciplinary report setting forth the *.002 charge.

3

The disciplinary hearing was conducted before a Disciplinary Hearing Officer (DHO) on April 14, 2020. Appellant requested and was afforded the assistance of a counsel substitute. Appellant pleaded not guilty to the charge and put on a defense at the hearing, claiming she had a cold and did not try to cough on Williams. Counsel substitute requested that the charge be dismissed because appellant "had a cough."

Statements of eight eyewitnesses of the incident described appellant's behavior. Each eyewitness reported that appellant was agitated, uncooperative, belligerent, combative and/or defiant until the O.C. spray was used. Four of the eyewitnesses observed appellant intentionally cough in Williams's direction while making threatening remarks about staff contracting or dying from COVID-19.

More specifically, Registered Nurse Gasataya observed appellant "coughing intentionally in front of the officers" and verbally threatening them. (Ra50). SCPO Stallworth reported that appellant "bec[a]me belligerent towards [Williams]," repeatedly stated that she wanted to fight Williams, and "attempted to spit and cough on [Williams]," while stating that she was going to give Williams COVID-19 and that she hoped Williams would die. SCPO Agosto

reported appellant "cough[ed] multiple times at . . . close proximity at [Williams]" and shouted threats.

Appellant was afforded the opportunity to call witnesses on her own behalf at the hearing but declined to do so. Appellant also declined the opportunity to confront and cross-examine the adverse witnesses.

Appellant raised numerous procedural defenses that pertained solely to the *.002 and *.005 charges relating to a September 2019 incident, not the charges that are the subject matter of this appeal. The only procedural defense that pertains to the remaining charges that are the subject matter of this appeal is that charges *.803/*.002 and *.050 were not supported by substantial evidence in the record.

After hearing the testimony, reviewing the evidence, and considering appellant's defenses, the DHO amended the *.002 charge to prohibited acts *.803/*.002 and the *.050 charge to prohibited act .709, and found appellant guilty of the amended charges. The DHO noted the seriousness of the pandemic, the dangers posed by COVID-19, and the evidence that appellant intentionally coughed on Williams. The DHO imposed sanctions of 185 days of administrative segregation, 100 days loss of commutation time, 20 days loss of recreation privileges, and 15 days loss of telephone privileges.

Appellant administratively appealed the DHO's decision. Appellant argued that the alleged facts did not constitute an assault and that she was physically incapable of covering her mouth while coughing due to being restrained by handcuffs that were tethered to a waist chain. On April 16, 2020, Associate Administrator St. Paul upheld the guilty finding and the sanctions imposed. This appeal followed.

Pertinent to this appeal, appellant now raises the following contentions:

> THE FINDING OF GUILTY FOR THE *.803/*.002 AND .709 CHARGES SHOULD BE REVERSED BECAUSE THERE WAS NOT SUBSTANTIAL EVIDENCE TO SUPPORT THE FINDING OF GUILTY.
>
> 1. The Disciplinary Charge Fails to Specify What Actions by an Inmate Constitute an Assault Under the Code and [is] Therefore Unconstitutionally Vague.
>
> 2. Even Under Commonly-Understood Principles, No Attempted Assault Occurred.

Our review of a final agency decision is limited. Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 190 (App. Div. 2010). Reversal is appropriate only when the agency's decision "is arbitrary, capricious, or unreasonable or it is not supported by substantial credible evidence in the record as a whole." In

6

re Taylor, 158 N.J. 44, 657 (1999) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)).

"[A]lthough the determination of an administrative agency is entitled to deference, our appellate obligation requires more than a perfunctory review." Figueroa, 414 N.J. Super. at 191 (quoting Blackwell v. Dep't of Corr., 348 N.J. Super. 117, 123 (App. Div. 2002)). We engage in a "careful and principled consideration of the agency record and findings Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

In a disciplinary proceeding, an inmate is not entitled to "the full panoply of rights" afforded a defendant in a criminal prosecution. Avant v. Clifford, 67 N.J. 496, 522 (1975) (quoting Morrissey v. Brewer, 408 U.S. 471, 480 (1972)). An inmate is entitled to written notice of the charges at least twenty-four hours prior to the hearing; an impartial tribunal; a limited right to call witnesses and present documentary evidence; a limited right to confront and cross-examine adverse witnesses; a right to a written statement of the evidence relied upon and the reasons for the sanctions imposed; Id. at 525-33. "When an inmate has been charged with an asterisk offense, the inmate shall be afforded the right to request representation by a counsel substitute." N.J.A.C. 10A:4-9.12(a). In addition. if

the "inmate is illiterate or cannot adequately collect and present the evidence in his or her own behalf, the inmate may request to receive the services of a counsel substitute. N.J.A.C. 10A:4-9.12(b).

Here, appellant received timely notice of the charges pertaining to this appeal. She was appointed a counsel substitute to assist her. Appellant was afforded the opportunity to call witnesses on her own behalf and to confront and cross-examine adverse witnesses but declined to do so. Appellant received all the process she was due. We discern no denial of due process.

Appellant's argument that prohibited act *.002 is unconstitutionally vague either facially or as applied, does not require extended discussion. R. 2:11-3(e)(1)(E). We disagree. Intentionally coughing on someone while manifesting symptoms of being infected by a highly communicable disease that can be spread through airborne particles and cough droplets clearly falls within the definition of an assault.[4] Cf. N.J.S.A. 2C:12-13 (throwing a bodily fluid at a NJDOC employee is a third-degree or fourth-degree aggravated assault

---

[4] The "[s]pread of COVID-19 occurs via airborne particles and droplets. People who are infected with COVID-19 can release particles and droplets of respiratory fluids that contain the SARS C0-V-2 virus into the air when they exhale (e.g., quiet breathing, speaking, singing, exercise, coughing, sneezing)." Indoor Air and Coronavirus (COVID-19), U.S. Env't Prot. Agency (Dec. 15, 2021), https://www.epa.gov/coronavirus/indoor-air-and-coronavirus-covid-19.

depending on whether the victim suffers bodily injury). The crime of throwing a bodily fluid at a law enforcement officer "is a species of assault . . . ." Cannel, N.J. Criminal Code Annotated, cmt. on N.J.S.A. 2C:12-13 (2021). To be guilty of violating N.J.S.A. 2C:12-13, an inmate must act "purposefully" when projecting bodily fluid at a corrections officer. State v. Majewski, 450 N.J. Super. 353, 361-67 (App. Div. 2017).

We next consider whether there was adequate evidence to find appellant guilty of committing prohibited acts *.803/*.002 and .709. "A finding of guilt at a disciplinary hearing shall be based upon substantial evidence that the inmate has committed a prohibited act." N.J.A.C. 10A:4-9.15(a). "Substantial evidence" is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Figueroa, 414 N.J. Super. at 192 (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)). In other words, it is "evidence furnishing a reasonable basis for the agency's action." Ibid. (quoting McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 562 (App. Div. 2002)).

Our careful review of the record convinces us there was substantial credible evidence in the record that appellant committed prohibited acts *.803/*.002 and .709. Here, the observations of the multiple eyewitnesses, coupled with appellant's statements during the incident, provided both direct and

circumstantial evidence that appellant acted "purposely" when subjecting Williams to intentional coughing while appellant was unmasked. Accordingly, the NJDOC's final determination was not arbitrary, capricious, or unreasonable.

To the extent we have not expressly discussed any remaining arguments raised by appellant, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3719-19